UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH J. DIBENEDETTO,
     Plaintiff,

vs.

NATIONAL RAILROAD PASSENGER
CORPORATION,
     Defendant.

CIVIL ACTION NO.: 04-10570-RCL

## NATIONAL RAILROAD PASSENGER CORPORATION'S EMERGENCY ASSENTED TO MOTION FOR A PROTECTIVE ORDER

The defendant, National Railroad Passenger Corporation ("AMTRAK"), hereby moves

for a protective order to postpone the final pre-trial conference set for September 1, 2005 and the

trial date set for September 19, 2005. Counsel for the plaintiff, Thomas J. Joyce, III, Esq., has

assented to this motion. *See Affidavit of John E. Young, Esq.*, a copy of which is attached as

Exhibit "A." As grounds therefore, AMTRAK states as follows:

Counsel for AMTRAK will be on trial in Burke, *et al.* v. Consolidated Rail Corporation,

*et al.*, SUCV1999-05325 beginning September 19, 2005 in Suffolk County, MA Superior Court

in front of the Honorable Judge John C. Cratsley, with possible jury empanelment beginning on

September 16, 2005. *See Notice To Appear For Trial*, a copy of which is attached as Exhibit

"B." The Burke matter has been on the Superior Court's docket since October 1999 and the trial

date has been postponed at least nine (9) times. *See Amended Tracking Orders*, copies of which

are attached as Exhibit "C." The September 19, 2005 trial date is firm and the estimated length

of the Burke trial is thirty (30) days. *See Joint Pre-trial Memorandum*, a copy of which is

attached as Exhibit "D." As such, counsel for AMTRAK will be on trial on September 19, 2005,

the current date set for the trial of this matter.

In further support of postponing the final pre-trial conference and the trial date, the parties have agreed to mediate this case and request that the Court allow the parties the opportunity to go to mediation prior to trial.

For all of the above-stated reasons, the defendant AMTRAK hereby moves this Honorable Court for a protective order to postpone the final pre-trial conference and the trial date. Counsel for AMTRAK will be on trial in another court on September 19, 2005 and respectfully requests that the final pre-trial conference and the trial date be postponed. In addition, the parties would like the opportunity to mediate this case.

**WHEREFORE**, for all of the above-stated reasons, *National Railroad Passenger Corporation's Emergency Assented To Motion For A Protective Order* should be allowed.

## REQUEST FOR HEARING

In accordance with Local Rule 7.1(D), the defendant believes that oral argument, if necessary, may assist the Court and wishes to be heard and therefore requests that the Court schedule a hearing on its *Motion*.

<div style="margin-left: 40%;">

Respectfully submitted,
National Railroad Passenger Corporation,
By its attorneys,


_____
Michael B. Flynn, BBO #559023
John E. Young, BBO #654093
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive
Suite 200
Quincy, MA 02169
(617) 773-5500
(617) 773-5510 (facsimile)

</div>

## **CERTIFICATION**

In accordance with L. R. 7.1, I, John E. Young, Esq., certify that I have conferred with counsel for the plaintiff, Thomas J. Joyce, III, Esq., and he has assented to *National Railroad Passenger Corporation's Emergency Motion For A Protective Order*. *See* Exh. A.

John E. Young, Esq.

Dated: August 11, 2005

3

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH J. DIBENEDETTO, Plaintiff, vs. NATIONAL RAILROAD PASSENGER CORPORATION, Defendant. | CIVIL ACTION NO.: 04-10570-RCL |

### AFFIDAVIT OF JOHN E. YOUNG, ESQ.

I, John E. Young, Esq., do hereby swear and depose as follows:

1.    I am an attorney duly admitted to practice law in the Commonwealth of Massachusetts and I represent the defendant in the above-entitled matter;

2.    On August 4, 2005, I spoke with counsel for the plaintiff, Thomas J. Joyce, III, Esq., Hannon & Joyce, 150 S. Independence Mall West, Philadelphia, PA 19106, to discuss the issues raised in *National Railroad Passenger Corporation's Emergency Motion For A Protective Order*;

3.    On August 4, 2005, Attorney Joyce assented to *National Railroad Passenger Corporation's Emergency Motion For A Protective Order*;

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 11th DAY OF, AUGUST 2005.

John E. Young, Esq.

# EXHIBIT B

# Commonwealth of Massachusetts
## County of Suffolk
### The Superior Court

CIVIL DOCKET# **SUCV1999-05325**

RE:     **Burke et al v Consolidated Rail Corp et al**

TO:Bethany M Machacek, Esquire
    Flynn & Associates (Michael B)
    400 Crown Colony Drive
    Suite 200
    Quincy, MA 02169



## NOTICE TO APPEAR FOR TRIAL

A trial has been scheduled for the above referenced case as follows:

    DATE:          **09/19/2005**
    TIME:          **09:00 AM**
    LOCATION:      **CtRm 314, 3 Pemberton Square, Boston**

All <u>trial counsel are required to attend</u>.

Dated at  Boston, Massachusetts this 8th day of August,2005.

                                        BY:

                                            Jane M. Mahon
                                            Assistant Clerk

Telephone: 617-788-8110

**Disabled individuals who need handicap accommodations should contact the Administrative
Office of the Superior Court at (617) 788-8130**
*Check website as to status of case: **http://ma-trialcourts.org/tcic***

cvtrrinot_2.wpd 573861 triju carangel

# EXHIBIT C

**FILE COPY**

**Commonwealth of Massachusetts**
**County of Suffolk**
**The Superior Court**

RECEIVED
SEP 07 2000
FLYNN & ASSOCIATES, P.C.

CIVIL DOCKET# SUCV1999-05325

RE:    **Burke et al v Consolidated Rail Corp et al**

TO: Sean W Farrell, Esquire
Flynn & Associates (Michael B)
189 State Street
6th floor
Boston, MA 02109

*Amended* **TRACKING ORDER - F TRACK**

You are hereby notified that this case is on the fast (F) track as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 02/02/2000 |
| Response to the complaint filed (also see MRCP 12) | 04/02/2000 |
| All motions under MRCP 12, 19, and 20 filed | 04/02/2000 |
| All motions under MRCP 15 filed | 04/02/2000 |
| All discovery requests and depositions completed | 03/15/2001 |
| All motions under MRCP 56 filed and heard | 07/30/2001 |
| Final pre-trial conference held and firm trial date set | 09/23/2001 Sunday |
| Case disposed | 10/01/2001 |

The final pre-trial deadline is **not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session **A** sitting at **Suffolk Superior Court in** Boston.

Dated: 09/06/2000

Michael Joseph Donovan,
Clerk of Courts

BY:
James P. Kelly/Timothy Walsh
Assistant Clerk

Location: CtRm 4 -12th fl., 90 Devonshire St., Boston
Telephone: 617-788-8107

cvdtracf_2.wpd 1719808 inidoc01 ligottir

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET# **SUCV1999-05325**

RE:   **Burke et al v Consolidated Rail Corp et al**

TO:Sean W Farrell, Esquire
Flynn & Associates (Michael B)
189 State Street
6th floor
Boston, MA 02109

RECEIVED
MAR 2 1 2001
FLYNN & ASSOCIATES, P.C.
MBF/SWF

## _Amended_ TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
| --- | --- |
| Service of process made and return filed with the Court | 02/02/2000 |
| Response to the complaint filed (also see MRCP 12) | 04/02/2000 |
| All motions under MRCP 12, 19, and 20 filed | 04/02/2000 |
| All motions under MRCP 15 filed | 04/02/2000 |
| All discovery requests and depositions completed | 07/06/2001 |
| All motions under MRCP 56 filed and heard | 08/03/2001 |
| Final pre-trial conference held and firm trial date set | 09/07/2001 |
| Case disposed | 11/09/2001 |

The final pre-trial deadline is **not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session A sitting in **CtRm 4 -12th fl., 90 Devonshire St., Boston at Suffolk Superior Court.**

Dated: 03/19/2001

Michael Joseph Donovan,
Clerk of Courts

BY:
James P. Kelly/Timothy C. Walsh
Assistant Clerk

Location: CtRm 4 -12th fl., 90 Devonshire St., Boston
Telephone: 617-788-8107

cvdtracf_2.wpd 1719808 inidoc01 mackhele

RECEIVED

OCT 2 3 2001

FLYNN & ASSOCIATES, P.C.

County of Suffolk
The Superior Court



CIVIL DOCKET# **SUCV1999-05325**

RE: **Burke et al v Consolidated Rail Corp et al**

TO: Michael B Flynn, Esquire
Flynn & Associates (Michael B)
189 State Street
6th floor
Boston, MA 02109

## AMENDED
## TRACKING ORDER - F TRACK

    You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 02/02/2000 |
| Response to the complaint filed (also see MRCP 12) | 04/02/2000 |
| All motions under MRCP 12, 19, and 20 filed | 04/02/2000 |
| All motions under MRCP 15 filed | 04/02/2000 |
| All discovery requests and depositions completed | 03/16/2002 |
| All motions under MRCP 56 filed and heard | 05/18/2002 |
| Final pre-trial conference held and firm trial date set | 07/11/2002 |
| Case disposed | 08/17/2002 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session A sitting in **CtRm 4 -12th fl., 90 Devonshire St., Boston at Suffolk Superior Court.**

Dated: 10/22/2001

Michael Joseph Donovan,
Clerk of Courts

BY:

James P. Kelly/Claire Walsh
Assistant Clerk

Location: CtRm 4 -12th fl., 90 Devonshire St., Boston
Telephone: 617-788-8107

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET# **SUCV1999-05325**

RE:    **Burke et al v Consolidated Rail Corp et al**

TO: Michael B Flynn, Esquire
Flynn & Associates (Michael B)
189 State Street
6th floor
Boston, MA 02109



RECEIVED

JAN 0 9 2002

FLYNN & ASSOCIATES, P.C.

## AMENDED
## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 02/02/2000 *SATURDAY* |
| Response to the complaint filed (also see MRCP 12) | 04/02/2000 |
| All motions under MRCP 12, 19, and 20 filed | 04/02/2000 |
| All motions under MRCP 15 filed | 04/02/2000 |
| All discovery requests and depositions completed | 08/23/2002 |
| All motions under MRCP 56 filed and heard | 10/25/2002 |
| Final pre-trial conference held and firm trial date set | 11/22/2002 |
| Case disposed | 01/23/2003 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session **G** sitting in
**CtRm 3 - 12th fl., 90 Devonshire St., Boston at Suffolk Superior Court.**

Dated: 01/08/2002

Michael Joseph Donovan,
Clerk of Courts

BY:

Francis T. Foley
Assistant Clerk

Location: CtRm 3 - 12th fl., 90 Devonshire St., Boston
Telephone: 617-788-8121

Check website as to status of case: **http://ma-trialcourts.org/tcic**

cvdtracf_2.wpd 1719808 inidoc01 mackhele

# Commonwealth of Massachusetts
## County of Suffolk
### The Superior Court

CIVIL DOCKET# **SUCV1999-05325**

RE:    **Burke et al v Consolidated Rail Corp et al**

TO:Sean W Farrell, Esquire
Flynn & Associates (Michael B)
189 State Street
6th floor
Boston, MA 02109

## AMENDED
## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 02/02/2000 |
| Response to the complaint filed (also see MRCP 12) | 04/02/2000 |
| All motions under MRCP 12, 19, and 20 filed | 04/02/2000 |
| All motions under MRCP 15 filed | 04/02/2000 |
| All discovery requests and depositions completed | 01/10/2003 |
| All motions under MRCP 56 filed and heard | 02/28/2003 |
| Final pre-trial conference held and firm trial date set | 03/28/2003 |
| Case disposed | 05/23/2003 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session **G** sitting in
**CtRm 3 - 12th fl., 90 Devonshire St., Boston at Suffolk Superior Court.**

Dated: 10/22/2002

Michael Joseph Donovan,
Clerk of Courts

BY:

Francis T. Foley
Assistant Clerk

Location: CtRm 3 - 12th fl., 90 Devonshire St., Boston
Telephone: 617-788-8121

*Check website as to status of case: **http://ma-trialcourts.org/tcic***

cvdtrecf_2.wpd 1719808 inidoc01 mackhele

Commonwealth of Massachusetts
County of Suffolk
The Superior Court

JAN 1 3 2003

CIVIL DOCKET# **SUCV1999-05325**

RE: **Burke et al v Consolidated Rail Corp et al**

TO: Michael B Flynn, Esquire
Flynn & Associates (Michael B)
189 State Street
6th floor
Boston, MA 02109

## AMENDED
## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 02/02/2000 |
| Response to the complaint filed (also see MRCP 12) | 04/02/2000 |
| All motions under MRCP 12, 19, and 20 filed | 04/02/2000 |
| All motions under MRCP 15 filed | 04/02/2000 |
| All discovery requests and depositions completed | 03/10/2003 |
| All motions under MRCP 56 filed and heard | 05/28/2003 |
| Final pre-trial conference held and firm trial date set | 06/28/2003 |
| Case disposed | 07/28/2003 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session **G** sitting in
**CtRm 3 - 12th fl., 90 Devonshire St., Boston at Suffolk Superior Court.**

Dated: 01/09/2003

Michael Joseph Donovan,
Clerk of Courts

BY:

Francis T. Foley
Assistant Clerk

Location: CtRm 3 - 12th fl., 90 Devonshire St., Boston
Telephone: 617-788-8121

*Check website as to status of case:* **http://ma-trialcourts.org/tcic**

cvdtracf_2.wpd 1719808 inidoc01 mackhele

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET# **SUCV2001-02180**

RE:    **Burke et al v Anderson Nichols & Company Inc**

TO: James F Freeley Jr, Esquire
Freeley & Freeley
284 Union Avenue
Framingham, MA 01702

### AMENDED
### TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 08/13/2001 |
| Response to the complaint filed (also see MRCP 12) | 10/12/2001 |
| All motions under MRCP 12, 19, and 20 filed | 10/12/2001 |
| All motions under MRCP 15 filed | 10/12/2001 |
| All discovery requests and depositions completed | 09/30/2003 |
| All motions under MRCP 56 filed and heard | 01/10/2004 |
| Final pre-trial conference held and firm trial date set | 04/29/2004 |
| Case disposed | 06/30/2004 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session G sitting in
**CtRm 3 - 12th fl., 90 Devonshire St., Boston at Suffolk Superior Court.**

Dated: 08/14/2003

Michael Joseph Donovan,
Clerk of Courts

BY:

Judith Trocki/Claire Walsh
Assistant Clerk

Location: CtRm 3 - 12th fl., 90 Devonshire St., Boston
Telephone: 617-788-8121

*Check website as to status of case:* http://ma-trialcourts.org/tcic

cvdtract_2.wpd 1980363 inkdoc01 mackhele

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET# **SUCV1999-05325**

RE: **Burke et al v Consolidated Rail Corp et al**

TO: Michael B Flynn, Esquire
Flynn & Associates (Michael B)
189 State Street
6th floor
Boston, MA 02109



## AMENDED
## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 02/02/2000 |
| Response to the complaint filed (also see MRCP 12) | 04/02/2000 |
| All motions under MRCP 12, 19, and 20 filed | 04/02/2000 |
| All motions under MRCP 15 filed | 04/02/2000 |
| All discovery requests and depositions completed | 06/30/2003 |
| All motions under MRCP 56 filed and heard | 07/30/2003 |
| Final pre-trial conference held and firm trial date set | 08/29/2003 |
| Case disposed | 10/30/2003 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session **G** sitting in
**CtRm 3 - 12th fl., 90 Devonshire St., Boston at Suffolk Superior Court.**

Dated: 04/09/2003

Michael Joseph Donovan,
Clerk of Courts

BY:

Francis T. Foley
Assistant Clerk

Location: CtRm 3 - 12th fl., 90 Devonshire St., Boston
Telephone: 617-788-8121

*Check website as to status of case:* **http://ma-trialcourts.org/tcic**

cvdtracf_2.wpd 1719808 inidoc01 mackhele

# Commonwealth of Massachusetts
## County of Suffolk
### The Superior Court

CIVIL DOCKET# **SUCV1999-05325**

RE:   **Burke et al v Consolidated Rail Corp et al**

TO:Bethany M Machacek, Esquire
Flynn & Associates (Michael B)
400 Crown Colony Drive
Suite 200
Quincy, MA 02169

------------

### NOTICE TO APPEAR FOR TRIAL

A trial has been scheduled for the above referenced case as follows:

> DATE:          **09/06/2005**
> TIME:          **09:00 AM**
> LOCATION:   **CtRm 314, 3 Pemberton Square, Boston**

All <u>trial counsel are required to attend</u>.

Dated at  Boston, Massachusetts this 16th day of May,2005.

BY:

Jane M. Mahon
Assistant Clerk

Telephone: 617-788-8110

**Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130**
*Check website as to status of case: **http://ma-trialcourts.org/tcic***

cvctrinot_2.wpd 564060 triju carangel

# EXHIBIT D

Commonwealth of Massachusetts

Suffolk ss

Superior Court
C.A. No. 99-5325A
200101CV278182

| | |
|---|---|
| Glen A. Burke And ) | |
| Joanne Burke, Plaintiffs ) | |
| v. ) | |
| Consolidated Rail Corporation ) | JOINT PRETRIAL MEMORANDUM |
| and Daniel O'Connell's Sons, Inc. ) | |
| Defendants, Third Party Plaintiffs ) | |
| v. ) | |
| Massachusetts Highway Department and ) | |
| Anderson-Nichols & Company, Inc. ) | |
| Third Party Defendants ) | |
| ) | |
| Verizon Communications, Inc., ) | |
| f/k/a Bell Atlantic, Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| Massachusetts Highway Department and ) | |
| Daniel O'Connell's Sons, Inc., Defendants ) | |
| ) | |

## I.     **AGREED FACTS**

None.

## II.     **STATEMENT OF EXPECTED EVIDENCE**

Plaintiff, Glen A. Burke and Joanne Burke:

The Plaintiffs expect to show that Glen Burke's employer Conrail is responsible for his injuries in that they failed to properly inspect and oversee the construction of the granite block retaining wall, failed to properly inspect the wall after it was built and failed to provide proper safety equipment (seat belts) in the engine of the train. Ultimately that the Defendant, Conrail failed to provide him with a safe place to work in violation of the Federal Employer's Liability Act (FELA).

The Plaintiff expects the evidence to show:

a.    that he was on the train to learn and qualify on the Boston to Selkirk, NY route and that he was not to act as the Conductor of the train.

b.    The Plaintiff was not wearing any restraint system as there were none provided on that train.

c.    The location of the train wreck was Palmer, Massachusetts on or about May 21, 1998 at approximately 2:10 am.

d.    In the train with Mr. Burke at the time was Conductor Peter Sacchetti and an Engineer by the name of Mr. Don Lacher.

e.    The train as it approached the Palmer Street Bridge in Palmer Massachusetts identified an object on the train tracks too late to stop the train causing the train to collide with heavy granite blocks which had spralled across the train tracks in the vicinity of the bridge causing the train to come off the tracks and derail the train.

f.    The train consisted of approximately 38 cars with three locomotives.

g.    Mr. Burke was caused to be thrown out of his seat striking the wall and injuring his right shoulder and neck.

h.    There was smoke that entered the locomotive after it came to rest listing to the left off the tracks. There were flames which reached approximately 85 feet in the air. There was a smell of fuel burning in the air. After the crash there were people around the tracks yelling at Mr. Burke and the other occupants to get off the engine because the engines were on fire.

2

i.    Mr. Burke appeared "super nervous" as were the other occupants of the engine. Mr. Burke appeared to be in shock as he watched the trains burning.

j.    Shortly after the date of the incident through October 21, 1998 Mr. Burke treated with several doctors, psychologists and psychiatrists for his post traumatic stress and major depression. He treated briefly for the neck, shoulder and back injuries.

k.    On October 21, 1998, Mr. Burke returned to work at Conrail's Beacon Park Yard after an absence of five months following the train wreck at Palmer, Massachusetts. Although Mr. Burke was suppose to return slowly, he returned as a qualified train brakeman performing all the duties of a full time employee.

l.    On his return, he was very tense and anxious, he worked as the brakeman on the evening shift with another conductor and engineer. Through out the shift he continued to be very apprehensive but tried to hide his anxiety and continued to do what was expected of him in which he was successful.

m.    After the conductor and the engineer left at the end of the shift, Mr. Burke, being the utility brakeman, had to stay on to handle any train that was leaving or coming in to the yard. After tying on TV 13 which was supposed to be his last job for the night, he went to the lead engine spoke to the conductor and engineer and told them everything was okay and they can leave whenever they were ready. Mr. Burke then left and started walking back toward the office when he suddenly felt very dizzy and short of breath. On reaching the office building Mr. Burke stood against the wall trying to catch his breath. Mr. Burke has a lapse in memory but found himself on the ground not knowing how he got there. After a while he found myself sitting there

3

very dizzy and actually gasping for breath. Mr. Burke remembered the engineer on the night shift calling out to him and telling him that it was alright to go home, Mr. Burke tried to get up from the ground by leaning on the wall for a while then went into the office where he sat on a chair for a long period of time trying to pull himself together.

n.    When he thought he could walk he took his bags and walked to his car and got in but still was very dizzy and short of breath. He sat there for a while not being aware of how long but after sometime the car inspector came over to his car and told him the yard master wanted him to stay on a little while longer because there was a train coming in at 1:30 a.m. and would like him to prepare for it. The inspector also said that the yard master would like for Mr. Burke to call him so he can inform him about the train.

o.    After a while Mr. Burke returned to the office where he called the yard master by phone and told him that he was not feeling very well but he will wait for the train to come in.

p.    After waiting for a while, realizing that the dizziness and shortness of breath was not going away he told the yardmaster that he was unable to continue working and wanted to go home. Mr. Burke was told to leave and he slowly drove himself home. Upon arriving home, he left all his belongings in the car, stumbled into the house and went to bed, he then told his wife what happened to him at work. Mr. Burke called in sick the next day and remained in bed and rested for several days attempting to recuperate.

4

q.     The medical evidence would reveal that Mr. Burke had an E.K.G. test which results

revealed that he had a heart attack at work on October 28, 1994. Mr. Burke was

diagnosed with a heart attack that was positive for ischemia.

Mr. Burke has not returned to train work and has suffered significant financial losses

as a result of not being able to return to work for the railroad. He has permanent restrictions

on his physical abilities and his past, present and future earning capacity.

The Plaintiff expects to show that the Defendant, Daniel O'Connell's Sons failed to

properly construct the granite block retaining wall in accordance with proper safe standards.

That they negligently, carelessly, improperly and/or recklessly designed, constructed,

installed, manufactured, inspected, repaired, reconstructed, altered and/or maintained the

retaining wall and failed to warn that the wall may fall down. As a result of the negligence

of the Defendant, Daniel O'Connell's Sons, Inc. the retaining wall fell down which was a

direct and proximate cause of the Plaintiff suffered injuries.

The Plaintiff also expects the evidence to show that the Defendant, Anderson-

Nichols & Company, Inc. failed to properly design the bridge and retaining wall and

negligently, carelessly, improperly and/or recklessly allowed the retaining wall to not be tied

into the abutment of the bridge and to not be replaced with a modern wall. As a result of

Anderson-Nichols negligence, the plaintiff as a direct and proximate cause suffered personal

injuries

5

**Defendant/Third-Party Plaintiff Conrail:**

    1.    **As to the Plaintiff's Case:**

Conrail expects the evidence to show that it is not responsible under the FELA for the injuries sustained by the plaintiff following the derailment on May 21, 1998. The defendant expects the evidence to show that Conrail had no knowledge, nor did it have any reason to know, of the condition which allegedly caused the plaintiff's injuries. The defendant further expects the evidence to show that it provided the plaintiff a safe place to work and that any injuries sustained by the plaintiff as a result of the derailment were not proximately caused by Conrail's conduct. The collapse of the wall which caused the derailment was due to the negligence of MassHighway, DOC and ANCO. Conrail also expects to prove that the plaintiff suffered no physical injury as a result of the derailment and that his alleged heart attack upon returning to work was not caused by the derailment.

On May 21, 1998, the plaintiff was riding in the left front seat of a locomotive operating westbound between Boston, MA and Selkirk, NY. The plaintiff was a brakeman/conductor trainee for Conrail qualifying to be a conductor on the Boston to Selkirk line.

A few minutes before the train derailed, Mr. Lacher, the engineer, pulled the train onto a side track to allow an eastbound train to proceed over the set of tracks on which the plaintiff's train had been traveling. Mr. Lacher then pulled the train back onto the southern-most main line track and continued west, gradually approaching the wall that would ultimately collapse. The eastbound train which passed the plaintiff's train had safely passed by the same wall, without incident, only minutes earlier. Before collapsing, the wall held

6

back part of the embankment in the southeastern quadrant of the Main Street Bridge in Palmer, MA. The wall was owned and maintained by MassHighway. Within less than 5 minutes of the trains passing one another, the wall collapsed and spilled granite blocks onto the track.

Shortly before the train derailed, the plaintiff bent over in his chair for 2 to 5 seconds while trying to locate a can of nuts he had brought with him. When they were approximately 100 feet from the scene of the derailment, Mr. Lacher and Mr. Sachetti, a conductor, yelled "what's that" in reference to large slabs of granite rock they observed on the track. While Mr. Lacher applied the emergency brakes and placed an emergency call to the dispatcher, the plaintiff failed to depress an emergency brake lever within his reach. The locomotive, moving at less than 25 miles per hour, then struck the granite slabs on the track. Upon impact, the locomotive derailed and traveled approximately 50-100 feet until coming to a stop. During the impact, the plaintiff fell off of his chair and onto the floor but did not sustain any fractures, bruises or cuts. Other portions of the train caught fire and/or began to smoke, but there was neither smoke nor a fire in the plaintiff's locomotive. The plaintiff, as well as the remainder of the crew, exited the locomotive and slowly walked away from the scene.

Conrail officials arrived at the scene within one hour, and the plaintiff and crew members were taken to a nearby yard office by Gene Willey, a Conrail official. The plaintiff told Mr. Willey that he felt ok and did not require medical attention. The plaintiff called in sick to work the next day. After several days passed, Conrail contacted the plaintiff to determine where he had been and to inform him that he should contact certain Conrail

7

officials if he was injured.  At no time following the derailment did the plaintiff report to Conrail that he had been injured, even after Conrail specifically requested that the plaintiff report any such injuries on approximately June 12, 1998.

Approximately two (2) weeks after the derailment, on June 2, 1998, the plaintiff first sought medical attention from Dr. Mark Drews.  The plaintiff was not told by a physician that he could not return to work.  After being referred to Dr. Brett T. Litz for a psychological evaluation on June 12, 1998, the plaintiff first reported to a medical provider that he was having problems sleeping.  On September 15, 1998, Dr. Litz wrote a letter to Conrail stating that the plaintiff was able to return to full duties at work.  After undergoing a "Return to Work" physical a few days later, the Conrail Medical Department determined that there had been nothing wrong with the plaintiff and cleared him to return to work upon his completion of a safety training course.  The plaintiff decided that he was still experiencing a subjective fear of trains, and he decided that he should not return to work.  Instead, the plaintiff remained out of work for approximately five (5) months following the derailment.

On October 20, 1998, the plaintiff returned to work at Conrail's Beacon Park Yard as a brakeman.  The plaintiff had no problems or injuries during his shift, nor did he experience any anxiety, fear or stress about working on board trains.  It was not until he had completed his duties, at the end of his shift, that the plaintiff allegedly became short of breath, dizzy, weak and tired.  The plaintiff did not, however, experience pain in his chest or heart, nor did he experience any tingling or numbness on the left side of his upper torso.  The plaintiff was told by an engineer that he could go home, and the plaintiff left the yard and proceeded to his car.  However, a co-worker informed the plaintiff that he was being summoned back to the

8

yard office to prepare for an incoming train. While waiting for the train, the plaintiff

decided he was not feeling better, and asked if he could go home. Prior to leaving the yard,

the plaintiff did not report any alleged symptoms to Conrail. The plaintiff called in sick the

next day and attributed his heart attack to the derailment and his first day back at work.

Conrail again had to call the plaintiff after several days to determine his whereabouts and

medical condition. The plaintiff went to see Dr. Drews six (6) days later and told Dr. Drews

that he felt tired and distressed on October 20, 1998. The plaintiff claims that Dr. Drews

informed him that he had a heart attack and referred the plaintiff to Dr. Philip J. Podrid.

After conducting tests, Dr. Podrid determined that the plaintiff's symptoms were not

indicative of a major cardiac problem.

The plaintiff, a heavy cigarette smoker, had preexisting conditions of fatigue,

hyperlipidemia and cholesterol, conditions which the plaintiff's own expert cardiologist, Dr.

Paul Minton, admitted made the plaintiff susceptible to a heart attack. In addition, the

plaintiff had a family history of diabetes and high blood pressure. The plaintiff had also

been advised by his doctors to exercise and monitor his diet, although he failed to follow this

advice. Dr. Minton also opined that the plaintiff did not have a heart attack on October 20,

1998 after reviewing the symptoms the plaintiff described experiencing on October 20,

1998. Conrail also expects that Dr. Garcia, an expert cardiologist retained by the defendants,

will testify that the plaintiff's heart complaints were not causally related to the derailment.

### 2.    As to Conrail's Third-Party Case:

Conrail incurred significant damages as the result of the derailment, and expects to

prove that the cross-claim and third-party defendants are liable to it for these damages.

9

Conrail expects the evidence to show that MassHighway breached its contractual obligations to Conrail with respect to the wall, the maintenance of the wall and the subsequent repairs thereof and that MassHighway is therefore responsible to Conrail for the costs incurred by Conrail with respect to the derailment, but that ANCO failed to properly design the wall and DOC failed to properly construct it. Conrail also expects the evidence to show that MassHighway played an active role in the design and construction of the Palmer Street Bridge and that MassHighway had ample notice of the deficiency of its design.

Conrail suffered damages to its real property, railroad tracks, freight and lading, rolling stock, locomotives and other equipment, re-railing, transporting and repairing its locomotives, rolling stock and other equipment, cleaning its real property, repairing its track and track bed, removing debris, and the installation of temporary sheeting following the derailment. Conrail's damages exceed $1,000,000.00.

Pursuant to Agreement 7070, which was drafted by MassHighway, MassHighway bore responsibility "for the future maintenance, including the costs thereof, of all other facilities including the bridge." In addition, Agreement 7070 required that MassHighway comply with the requirements contained in Conrail's *Specifications* with respect to work around its railroad tracks. The "Division of Work" section contains several provisions in which Conrail promised to perform a number of services for MassHighway's benefit, including the provision of engineering services and the control of train traffic through the area of the bridge. In addition, MassHighway agreed to bear the entire cost of reconstructing the bridge and to reimburse Conrail for the "cost of the labor, materials, equipment, and other services furnished by the railroad." MassHighway also agreed to be responsible for the

10

"future maintenance, including the cost thereof, of all…facilities [other than the tracks and appurtenances of the railroad] including the bridge." MassHighway agreed to pay the estimated cost of $15,911.00 for Conrail's services under the agreement and authorized a bond to fund the payment for these services.

In 1994, MassHighway put out to bid contract No. 95301 to tear down the existing bridge and construct a new bridge in its place. After submitting a successful bid, DOC rebuilt the granite block retaining wall in August 1995. MassHighway employees were on site for most of the time the wall was being reconstructed. ANCO, as the architect, and MassHighway provided DOC with the plans and specifications for the construction work to be done at or near the bridge. MassHighway played an active role in the reconstruction of the bridge through a number of internal sections, including a Design Section, a Bridge Section, a Geotechnical Section, a Maintenance Section and a Construction Section. MassHighway specifically reviewed all of the plans submitted by ANCO and gave orders as to what designs should be used. MassHighway also performed its own independent design calculations prior to ANCO's involvement, determining itself that the existing granite block abutments, including the portion that collapsed on May 21, 1998, could safely withstand the loads of the new bridge.

Alan Clunie, ANCO's project manager, repeatedly recommended that the existing granite block walls be replaced because the new bridge was going to be heavier and the existing walls would not support the weight. However, MassHighway rejected this recommendation, opting instead to retain the existing walls, per its original plan. Mr. Clunie recommended using cantilevered-type concrete abutments instead of retaining the existing

11

walls. While MassHighway acquiesced and allowed Mr. Clunie to use cantilevered-type concrete abutments for the portion of the existing walls that would serve as the new abutments, it also ordered Mr. Clunie to retain the remainder of the existing granite block wall for the portion of the old wall abutment which served as a wingwall in the new design. It was this same retained portion that collapsed on May 21, 1998. In addition to the repeated recommendations from Mr. Clunie, MassHighway had visually observed bulging and/or dislodged granite blocks in 1994.

Conrail was not responsible for the maintenance, inspection or testing of the bridge and/or any of its walls, including the wall which collapsed. Conrail's review of the plans was limited to issues affecting the safe passage of trains, as well as clearance and drainage issues.

When construction began in 1995, DOC discovered that portions of the wall that were to be saved had in fact deteriorated. Instead of changing the design, MassHighway instructed DOC to remove the blocks and rebuild the wall. In constructing the bridge, DOC tore down and reconstructed the wall, re-using the wall's original granite blocks. The work completed by DOC at or near the bridge was done in accordance with the plans and specifications provided by ANCO and MassHighway. Furthermore, MassHighway's resident engineer, an employee of its Construction Section, oversaw DOC's everyday operations, inspected DOC's work on a daily basis and kept a daily record of all activities on the job site. MassHighway's resident engineer also had the authority to order DOC to perform certain activities throughout the course of the project, including ordering DOC to reconstruct a wall. The evidence will show that the portion of the wall MassHighway

12

ordered DOC to reconstruct was in fact the portion that ultimately collapsed on May 21, 1998. Conrail was not involved in the actual reconstruction of the wall.

According to the terms of Agreement 7070, MassHighway had a duty to inspect and maintain the bridge. As part of these inspections, the inspectors were required to inspect the wingwalls of the bridge in question, including the portion which ultimately collapsed on May 21, 1998. Nevertheless, Alexander Bardow, the Assistant Bridge Engineer in charge of MassHighway's bridge inspectors, admitted at his deposition that he allowed his inspectors to conduct merely "cursory" inspections. Moreover, Dennis Sullivan, the "team leader" of MassHighway inspectors who were in charge of inspecting the bridge in the years prior to its collapse, has admitted that, in direct violation of MassHighway's own requirements, he never inspected the portion of the wingwall which collapsed on May 21, 1998.

Immediately after the wall collapsed on May 21, 1998, Conrail began cleaning up the derailment and repairing its property. It was determined by its lead engineer on the scene, A. J. Radzikowski, that in order to ensure the safety of Conrail's trains, it would be necessary to hold back the slope which had previously been held back by the failed wingwall. Mr. Radzikowski considered this an emergency situation and communicated these concerns to MassHighway officials who represented themselves as being in charge of MassHighway's response to the derailment. Mohammed Nabulsi, MassHighway's Assistant Bridge Engineer, was concerned that a portion of the bridge would become undermined and collapse, considered the situation an emergency and a "public safety" issue and closed the bridge as a precaution. John Blundo, MassHighway's Deputy Chief of Highway Engineering, considered the situation an "emergency," determined that the structure of the

13

bridge was in danger and was concerned that the collapsed wall posed a "public safety" issue (that being the potential for the roadway to collapse.

At the scene, Mr. Radzikowski and Mr. Nabulsi discussed what precautions which would need to be taken to stabilize the bridge. MassHighway agreed that the slope needed to be shored up but was unable to install the precautions itself and was also unable to mobilize a contractor to do the work quickly enough. Instead, it was decided that Conrail would hire and retain a contractor to install temporary sheeting at the slope and that MassHighway would reimburse Conrail for any and all costs associated with this undertaking. Only after securing this agreement did Mr. Radzikowski hire a contractor (Northern Construction) which shortly thereafter erected the temporary sheetings. Conrail paid for these services and promptly billed MassHighway as per the agreement made with Mr. Radzikowski.

According to Agreement 7070, there is an exception to the written approval requirement for additional expenditures pertaining to the repair and reconstruction of the bridge for cases which are considered a public safety threats or threats to operating the railroad safely. In such safety related situations, Agreement 7070 further provides that "the entire cost of making said changes will borne by the Commonwealth and the Commonwealth will reimburse the railroad for the actual costs of the labor, materials, equipment and other services furnished by the railroad."

MassHighway has on no fewer than two occasions awarded contracts, through the public bidding process, to a contractor to replace the temporary sheeting and reconstruct the collapsed wall, but has yet to authorize the commencement of performance of this project.

**Defendant: Daniel O'Connell & Sons Statement of Anticipated Evidence:**

### 1.    The Burke Claims

The plaintiff, Glen Burke ("Burke"), brought this action following the derailment of a Conrail locomotive in which he was riding as part of his employment with Conrail. The train struck a number of large granite blocks on the track and derailed. The granite blocks, which had been part of a granite retaining wall adjacent to a bridge located in Palmer, Massachusetts had collapsed onto Conrail's tracks on or about May 21, 1998. The granite wall and the bridge were part of a construction project ("the Bridge Project") undertaken by the Massachusetts Highway Department ("MassHighway") in 1994.

The Bridge Project contract between MassHighway and O'Connell called for the demolition of the then existing bridge and the construction of a new bridge. Anderson Nichols & Company, Inc. ("ANCO"), was the architect on the project. As the architect, ANCO was responsible for the safety design for the entire project, including the granite wall. As the owner and overseer of the project, MassHighway also had duties in the design, construction, inspection and maintenance of the granite wall. Conrail, under a contract with MassHighway, reviewed and approved the construction plans for the project. As a co-owner of the project, with oversight responsibilities, Conrail also had duties as to the design, construction, inspection and maintenance of the project, including the granite wall.

O'Connell was a general contractor on the project. In 1995, O'Connell began work on the project. Under O'Connell's contract with MassHighway, O'Connell was directed and controlled in its work by the terms of the contract, as well as the Standard Specifications for Highways and Bridges dated 1988, the Supplemental Specifications dated August 7, 1991,

15

the 1977 Construction Standards, Contract Construction Plans as well as the direction and control from MassHighway on-site supervisory personnel.

The construction of the granite wall consisted of the removal of the existing granite wall and the rebuilding of the wall with the old granite blocks based upon the design and instructions provided to it by MassHighway. MassHighway Resident Engineer Chet Parzych gave O'Connell a design drawing and instructions for the building of the granite wall.

While the work was being performed by O'Connell, MassHighway's resident engineer was present as well as Conrail representatives. At the end of O'Connell's work on the project, MassHighway inspected O'Connell's work on the project, including the granite wall and approved it. Conrail inspected the work as well and never voiced any objection to the wall as constructed.

Both MassHighway and Conrail had a duty to inspect and maintain the wall subsequent to the completion of the project.

From the date O'Connell finished its work on the project in July 1996 through the date of the incident of May 21, 1998, MassHighway and Conrail conducted inspections of the bridge and the granite wall. There were no reported problems with the wall.

On May 21, 1998, Burke was traveling in the front left seat of a Conrail locomotive which was pulling a number of railroad cars westbound on the track. At the time he was a brakeman/conductor trainee for Conrail. Shortly before the train approached the Palmer Street bridge, the wall which had held part of the embankment on the southeastern quadrant of the bridge had collapsed with some of the granite blocks spilling onto the train tracks. As the train approached, the Conrail conductor applied the brakes but was unable to avoid

16

contact with the granite blocks and a derailment occurred. The cause of the collapse of the wall is unknown but it was not due to any failure by O'Connell.

O'Connell maintains that Burke did not suffer personal injuries in the incident, and is no event is O'Connell legally responsible or liable for any injuries claimed by Burke, and any injuries suffered by the plaintiffs were caused by Conrail, Anderson-Nichols and MassHighway.[1]

## 2.   **Conrail's Claims**

Conrail seeks to recover the property damage to its equipment caused by the collapse of the wall. O'Connell maintains that Conrail has responsibility for the design, construction, inspection and maintenance of the wall and that its own acts or omissions expose it to comparative liability. Similarly, the negligence of ANCO and MassHighway contributed to or caused the failure of the granite wall.

O'Connell maintains that it followed the instructions of MassHighway in constructing the wall, that its construction methods met the requirements for such construction and that when it finished the work on the wall in 1995, the wall was in sound condition.

**MassHighway's Statement of Expected Evidence:**

MassHighway expects the evidence will show that owed no duty in contract, nuisance, nor negligence to Conrail and even if it did owe a duty, the evidence will show the Commonwealth did not breach those duties. MassHighway also expects the evidence will show that even if it owed a duty to Conrail and it breached that duty, the evidence will show

---

[1]    O'Connell has raised third party claims against MassHighway and ANCO and inchoate contribution rights under G.L. c. 231B, §1 against Conrail.

the damages of which Conrail complains were not caused by any act or failure to act by any

public employee of MassHighway. Finally, MassHighway also expects the evidence will

show that even if MassHighway owed a duty to Conrail, MassHighway breached that duty,

and the breach caused damages to Conrail, the evidence will show those damages were also

caused by the breach of Conrail and should be reduced accordingly.

**Verizon Communications, Inc. Statement of Expected Evidence:**

1.    On or about May 21, 1998 in Palmer, Massachusetts, a Conrail train derailed as a

      direct result of the train striking granite blocks which had fallen from an adjacent

      failed retaining wall.

2.    As a result of the derailment, buried cable and conduit owned and maintained by the

      Plaintiff, Verizon, was damaged.

3.    On May 21, 1998, the Defendant, Massachusetts Highway Department, was

      responsible for the maintenance of bridge #P-1-27and the retaining wall.

4.    On May 21, 1998, the Defendant, O'Connell, was responsible for the construction of

      the bridge #P-1-27 and retaining wall.

      The Plaintiff, Verizon, expects to show that the Defendant, Massachusetts

Highway Department, failed to properly inspect and maintain the bridge and retaining

wall. As a result of the negligence of Massachusetts Highway Department, buried cable

and conduit owned and maintained by the Plaintiff, Verizon, was damaged.

      The Plaintiff, Verizon, also expects the evidence to show that the Defendant,

O'Connell, failed to properly construct the granite block retaining wall in accordance

with proper safe standards and with proper materials. As a result of the negligence of

18

O'Connell, buried cable and conduit owned and maintained by the Plaintiff, Verizon, was damaged.

### III.    **AGREED SUGGESTED DESCRIPTION OF THE CASE**

This is a case in which the plaintiff, Glenn A. Burke, contends that Conrail, Daniel O'Connell & Sons, and Anderson-Nichols, Co. negligently caused him to suffer personal injuries as the result of a train derailment which occurred on May 21, 1998. The derailment occurred after a wall collapsed, spilling granite blocks onto the track. The train in which Mr. Burke was riding hit the blocks and came off its tracks.

Anderson-Nichols designed a bridge for replacement in Palmer Massachusetts for Massachusetts Highway Department. DOC was hired by MassHighway to reconstruct the bridge. All of the work was being approved by Conrail. As part of the construction of the bridge, a southeast retaining wall was removed and replaced by DOC with approval by Conrail. On or about May 21, 1998 the retaining wall fell down causing the derailment of a Conrail train in which the Plaintiff, Glen A. Burke was working.

The Plaintiff, Glenn A. Burke has made a claim for personal injuries he suffered as a result of the train crash of May 21, 1998 against Anderson-Nichols, DOC and Conrail.

Conrail contends that it had no knowledge or reason to know of the wall's imminent collapse and that the injuries sustained by the plaintiff were not caused by its negligence.

19

Conrail has also brought claims against MassHighway, ANCO and DOC. Conrail contends that ANCO, DOC and MassHighway were negligent with respect to the design, construction and maintenance of the wall. Conrail suffered damages to its real property, railroad tracks, freight and lading, rolling stock, locomotives and other equipment, re-railing, transporting and repairing its locomotives, rolling stock and other equipment, cleaning its real property, repairing its track and track bed, removing debris, and the installation of temporary sheeting following the derailment. Conrail also contends that MassHighway breached the terms of a contract regarding the maintenance and repair of the wall.

Conrail, Daniel O'Connell & Sons, and Anderson-Nichols, Co. have all claimed that MassHighway is responsible for the wall's collapse. MassHighway denies these allegations. Daniel O'Connell's Sons, Inc. denies any liability to any party.

## IV.    STATEMENT OF UNUSUAL LEGAL ISSUES

### A. FELA Liability:

The defendant expects to prove that it provided the plaintiff with a "reasonably safe workplace" and thus did not violate the provisions of the Federal Employers' Liability Act, 45 U.S.C. 51, et seq. ("FELA"). Consequently, the defendant maintains that the plaintiff will be unable to meet his burden in proving each and every element of his FELA case. In order to recover under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§51 et seq., the plaintiff must prove that the railroad was negligent. Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29 (1944). A plaintiff's prima facie case under the FELA must include all the same

20

elements as are found in a common law negligence action including the element of foreseeability. Davis v. Burlington N., Inc., 541 F.2d 182 (8th Cir. 1976) cert. denied, 429 U.S. 1002 (1976); Robert v. Consol. Rail Corp., 832 F.2d 3 (1st Cir. 1987). The plaintiff must prove each of these elements by a fair preponderance of the evidence. Robert, 832 F.2d at 6. A FELA defendant is not required to provide a perfect or absolutely safe workplace; rather its duty is to provide only a reasonably safe place to work. Id. "Although the burden on a FELA plaintiff is not onerous, neither is it nonexistent, the plaintiff must present probative facts from which the negligence and the causal relation could reasonably be inferred." Dessi v. Pennsylvania R.R., 251 F.2d 149, 151 (3rd Cir. 1958), cert. denied, 356 U.S. 967 (1958). A plaintiff must not only prove the employer's negligence, but that the negligence was the actual and proximate cause of plaintiff's injuries. See Chesapeake & Ohio Ry. v. Carnahan, 241 U.S. 241, 244 (1916). Although FELA is construed broadly, it does not impose strict liability on employers. See Robert, 832 F.2d at 6. As stated by the Court in Conroy v. Conrail, 720 F.2d 221, 223 (1st Cir. 1983), "it is black letter law that a FELA plaintiff is not entitled to absolute security; the act, unlike Workmen's Compensation Statutes, does not make the employer an insurer .... It does not require absolute elimination of all dangers, but only contemplates the elimination of those dangers which could be removed by reasonable care on the part of the employer."

In this regard, statements that the plaintiff's burden of proof under the FELA is "slight" have occasionally been misconstrued. Specifically, the holding in Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 506 (1957) does not support the view

that FELA liability may be characterized "as one of slight negligence, minimal negligence, and even infinitesimal negligence." Such view has been soundly criticized in FELA decisions in recent years. An especially thoughtful analysis of this particular issue is provided in <u>Gautreaux v. Scurlock Marine, Inc.</u>, 107 F.3d 331, 335-339 (5th Cir. 1997) (reference to word "slightest" in <u>Rogers</u> decision modifies only the causation prong of statutory liability and does not modify the concept of "negligence"; thus, duty of care owed by FELA and Jones Act employers retains usual and familiar definition of ordinary prudence, and does not impose a higher standard of care on defendants).

### B.    Payment of Medical Expenses

Plaintiff [is] not entitled to recover damages for medical expenses covered by the plaintiff's insurance policy, the premiums for which were paid for by the railroad. <u>Rogers v. Chicago & Northwestern Transp. Co.</u>, 375 N.E.2d 952 (1978); <u>Nelson v. Pennsylvania Central R.R. Co.</u>, 415 F.Supp. 225 (1976). The plaintiff may not recover for medical expenses paid pursuant to the plaintiff's insurance policy covered by the railroad, but may introduce evidence concerning the amount of medical bills or expenses; defendant railroad may thereafter introduce evidence regarding the expenses that have been paid. <u>Brice v. National R.R. Corp.</u>, 664 F. Supp. 220 (1987). Some courts have held that a plaintiff cannot recover medical expenses paid by the railroad's health insurance and, therefore, the amounts of medical bills and expenses, bare little, if any relevance to the plaintiff's claim and were properly excluded from evidence. <u>Varhol v. National R.R Passenger Corp.</u>, 909 F.2d 1557 (7th Cir. 1990). 45

22

U.S.C. § 55 provides that a railroad may set off in a FELA suit "any sum it has contributed and paid to any insurance, relief benefit or indemnity that may have been paid to the injured employee on account of the injury or death for which said action was brought."

### C.    Payment of Wage Continuation Benefits

A railroad defendant is entitled to an offset for sums paid for medical treatment and for salary continuation under a long term disability plan. Anglim v. Missouri Pac. R.R. Co., 832 S.W.2d 298 (Mo. Banc 1992).

### D.    Prejudgment Interest

Prejudgment interest is not permitted in a FELA action for injuries.  Morgan v. Monessen Southwestern Ry. Co., 108 S.Ct. 1837 (1988).

### E.    Proper Measure of Damages

Net wage loss is the proper measure of damages. Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523 (1983); Norfolk & Western Ry. Co. v. Liepelt, 444 U.S. 490 (1980); Cazad v. Chesapeake & Ohio Ry. Co., 404 N.E.2d 320 (Ill.App 1980). Only after tax, or "net" income, is the proper measure of damages. Norfolk & Western Ry. Co. v. Liepelt, 444 U.S. 490 (1980).

Not only must federal income tax be deducted from any future wage loss calculation, but social security tax or railroad retirement tax must also be deducted, along with any state income tax. Pickel v. International Oilfield Divers, Inc., 791 F.2d 1237 (5th Cir. 1986); Matador v. Ingram Tank Ships, Inc., 732 F.2d 475 (5th Cir. 1985).

Plaintiff is required to deduct from his gross earnings not only taxes, but also

23

the business costs and expenses he will not incur as a result of his alleged injuries. These costs and expenses include union dues, transportation expenses, and special work clothing or safety equipment. Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523 (1983).

### F. Future Pain and Suffering

The FELA requires a reduction of future pain and suffering to present value. St. Louis S.W. Ry. Co. v. Dickerson, 470 U.S. 409 (1985).

### G. Verizon Communications, Inc.:

Whether or not the Defendants were negligent in their construction and maintenance.

### H. MassHighway:

Conrail has failed to respond to several discovery requests by MassHighway. For example, Conrail failed to respond in any manner to MassHighway's second request for production of documents served upon Conrail on or about September 30, 2003. Furthermore, Conrail has failed to adequately respond to interrogatories and a first request for production of documents as described in a letter from MassHighway to Conrail, dated September 19, 2003.

MassHighway filed a motion for summary judgment upon which the court has not ruled. If the court does not grant MassHighway's motion for summary judgment and some of Conrail's claims against MassHighway remain, additional questions of law may need to be decided prior to trial.

### V. POTENTIAL WITNESSES

### PLAINTIFFS:

1.    Glen A. Burke

2.     Joanne Burke
3.     Albert Sacchetti
4.     Donald L. Lasher
5.     Stephen Maiorano
6.     Donna Feng
7.     John W. Hoey
8.     All doctors who have treated Mr. Burke for injuries sustained in this incident may be called as witnesses to give their opinions regarding the treatment, diagnosis, prognosis and causal relationship of Mr. Burke condition:
a.     Dr. Mark Drew
b.     Brett T. Litz, Phd
c.     Dr. Jane Trachman
d.     Dr. Philip J. Podrid
9.     Keeper of records - medical providers
10.    Keeper of the records of Conrail
11.    John L . DeVito
12.    Anthony J. Radzikowski
13.    Alan R. Clunie
14.    Peter Wendt
15.    Stephen Potorski

The plaintiff reserves the right to supplement this witness list. The plaintiff further reserves the right to call all witnesses identified by the defendants.

**DEFENDANTS:**

**DEFENDANT, CONRAIL'S WITNESSES**

1.     Anthony J. Radzikowski, c/o CSX Transportation, Inc., Selkirk, NY;
2.     Alex Bardow, 12 Newton Street, Brighton, MA;
3.     Alan Clunie, 236 Adams Street, Fairhaven, MA;
4.     Alan Collins;
5.     Alan J. Roy, Palmer Fire Department;
6.     Alan Sapoucki;
7.     Arthur Drapoulos;
8.     Blake LaMouthe, Palmer, MA;
9.     Brett L. Litz, Ph.D;
10.    Brian Nolan, President, Omni Construction;
11.    C.W. Owens;
12.    Carl Johnson;
13.    Carl Roe, c/o CSX Transportation, Jacksonville, FL;
14.    Chester Parzych;

15. Clement Fung;
16. Cliff Roberts;
17. Dale Ophart, c/o CSX Transportation, Jacksonville, FL;
18. Dan Miller;
19. Daniel Anderson;
20. Daniel Crovo;
21. David Mullen, Esq.;
22. Daniel Pranaitas, Palmer Fire Department;
23. Deborah C. Ball;
24. Dennis Sullivan, 300 Rock Valley Road, Holyoke, MA;
25. Donna Feng, 19 Granby Heights, Granby, MA;
26. E. Neidbala;
27. Edward Dudek;
28. Edward Jendryski;
29. Eric Botterman;
30. G. Flint Berry;
31. George J. Kulik, PE, PC, Civil Engineer, Massachusetts Municipal Engineering Co., 12 Means Way, South Egremont, MA;
32. Glen Burke;
33. Herrick Spicer;
34. Homer Perkins;
35. J.D. Cossell;
36. Jack Winslow, 24 Walnut Street, Malden, MA;
37. James Caldenson;
38. James Little, c/o CSX Transportation, Beacon Park, NY;
39. James Sullivan;
40. James Whalen;
41. Joanne Burke;
42. John Blundo, 8 Tippy Cart Road, Canton, MA;
43. John Carlisle;
44. John Divitio, c/o Northern Construction;
45. John Donahue;
46. John Hoey, 1 Sunset Drive, Holden, MA;
47. John Kiernan, c/o CSX Transportation, Inc., Selkirk, NY;
48. John McDonald;
49. John O'Neil, c/o CSX Transportation, Framingham, MA;
50. John Ricoven, c/o Northern Construction;
51. John Tolin;
52. John Youngdahl;
53. Joseph Cucco;
54. Joseph Gill;
55. Joseph Salda;
56. Kanneth Wanar;

26

57.   Klaus Schoellner, 67 Spring Street, Lexington, MA;
58.   L. Lynch;
59.   Mark Banasoski;
60.   Mark Drews, M.D. (PL first reported injury to him);
61.   Michael McGrath;
62.   Michael Schwartz;
63.   Michael Swanson;
64.   Mohammed Nabulsi, 1 Walter Street, Worcester, MA;
65.   Nabil Hourasi;
66.   Patrick Landers, Jr., Palmer, MA;
67.   Paul R. Minton, M.D., Minton Forensic Consulting, Inc., Yarmouth, ME;
68.   Paul Sullivan, 128 Locke Hill Road, Wendell, MA;
69.   Paul Ugolini;
70.   Paula Kukucka;
71.   Perry Knickerbocker, 232 Gold Street, Belchertown, MA;
72.   Peter Garvey;
73.   Peter Wendt, c/o CSX Transportation, Selkirk, NY;
74.   Peter Witt;
75.   Philip J. Podrid, M.D.;
76.   Preston Huckerbee;
77.   R.J. Cantwell;
78.   R.W. Badger, c/o Clough, Harbour & Associates;
79.   Rebecca Savoie, CSX Transportation, Inc., 116 Pleasant Street, Rm 3314B, Easthampton, MA;
80.   representatives of Almes Huntley Jr. & Associates;
81.   representatives of Davis Occupational Medicine, Norwood, MA;
82.   representatives of Glidden Fencing;
83.   representatives of Jeannie Erectors;
84.   representatives of MRP Site Development;
85.   representatives of NE Stud Welding;
86.   representatives of NL Construction;
87.   representatives of Palmer Paving;
88.   representatives of Springfield Steel Erectors;
89.   representatives of D&T Limousine Service, P.O. Box 790, Columbia Station, OH;
90.   representatives of Don Millious Inc., 1182 Route 9W, P.O. Box 266, Selkirk, NY;
91.   representatives of Clean-Cans, P.O. Box 394, Ludlow, MA;
92.   representatives of Albany Ladder, 1586 Central Avenue, Albany, NY;
93.   representatives of AJS Environmental, Inc., 31 Croyden Street, Millbury, MA;
94.   representatives of Zielinski Brothers, Inc., 218 Shoemaker Lane, Agawam, MA;
95.   representatives of Winter's Rigging, Inc., 2110 Route 249, P.O. Box 488, North

Collins, NY;

96. representatives of W/M of Central Massachusetts, 124 Hartwell Street, West Boylston, MA;

97. representatives of the Town of Ware Police Department, 126 Main Street, Ware, MA;

98. representatives of Richard's Deli Restaurant, West Springfield, MA;

99. representatives of React Environmental Services, Inc., 654A Mount Road, Aston, PA;

100. representatives of Palmer Restaurant, 1376 Main Street, Palmer, MA;

101. representatives of Palmer Police Department, Town Building, 4417 Main Street, Palmer, MA;

102. representatives of Northern Construction Service, LLC, 183 Whiting Street, Hingham, MA;

103. representatives of Noonan Energy Corporation, 86 Robbins Road, P.O. Box 2858, Springfield, MA;

104. representatives of Ludlow Police Department, 612 Chapin Street, Ludlow, MA;

105. representatives of Healthy Choices, 1373 Main Street, Palmer, MA;

106. representatives of General Chemical Corporation, 138 Leland Street, P.O. Box 608, Framingham, MA;

107. representatives of Robert H. Finke & Sons, Inc., P.O. Box 127, Route 9W, Selkirk, NY;

108. representatives of Environmental Products & Services, Inc., Syracuse, NY;

109. representatives of Durod, Ltd., 130 Clay Pit Road, Marshfield, MA;

110. representatives of Deli Plus, P.O. Box 289, Route 9W, Selkirk, NY;

111. representatives of Carbone's Restaurant, Route 85, Hopkinton, MA;

112. representatives of John S. Lane & Son, East Mountain Road, Westfield, MA;

113. representatives of Faulkner Hardware, 425 Main Street, Palmer, MA;

114. representatives of Express Photo, Palmer, MA;

115. representatives of Big Y Foods, 2145 Roosevelt Avenue, Springfield, MA;

116. representatives of the Boston Medical Center (formerly Boston City Hospital), Boston, MA;

117. representatives of the Boston University Medical Group, Boston, MA;

118. representatives of the Whittier Street Health Center, Roxbury, MA;

119. Richard Kalsch;

120. Richard Nevinger, c/o CSX Transportation, Selkirk, NY;

121. Robert McCullough;

122. Robert Thormber;

123. Russ Dindio;

124. Sherman Eidelman;

125. Stephen Fink;

126. Stephen Maiorano, 21 Miller Avenue, Southampton, MA;

127. Steve O'Donnell;

128. Steve Potorski;

129.    Steven Litwin;
130.    T. Reidy;
131.    Theodore Balicki;
132.    Thomas Broderick, 59 Fuller Street, Middleborough, MA;
133.    Thomas Croteau;
134.    Thomas Penna;
135.    William Lawless; and
136.    William Torrey.

## DEFENDANT, DANIEL O'CONNELL'S SONS, INC. 'S WITNESSES
## Witness List – Daniel O'Connell & Sons

O'Connell may call one or more of the following persons identified in

discovery conducted by the parties:

Anthony J. Radzikowski

Alexander Bardow

John Blundo

Thomas Bodkin

Mohammad Nabulski

Dale Ophardt

Carl Roe

Peter Winter

John Youngdahl

Abe Serong

Peter Winter

Peter Wendt

Perry Knickerbocker

John Tolin

Rich Canfield

J. T. Sullivan

Alan Clunie

John Hoey

Dennis Sullivan

Stephen Maiorano

Homer Perkins

Chet Parzych

Eric Botterman

Thomas Broderick

James Little

John O'Neil

Richard Nevinger

John Kiernan

Cliff Roberts

Joseph Cucco

Paul Ugolini

Alan Sapowki

Peter Garvey

Robert McCullough

Steven Litwin

William Torrey

James Whalen

Herrick Spicer

Klaus Schoellner

Dan Miller

Deborah Ball

Alan Collins

R. J. Cantwell

C. W. Owens

Peter Witt

Richard Kalsch

J. D. Cossell

Kenneth Wanner

G. F. Berry

L. Lynch

Justin Radlo

Sherman Eidelman

John MacDonald

Leonard Aversa

Al Kottage

Robert Fournier

James Krapewski

Theodore Telega

Thomas Prentiss

Ed Mikalunas

Kathy Wroblewski

Rosaire Lemlin

O'Connell reserves the right to call any other witness identified by the other parties in the matter and to supplement the witness list prior to the time of trial.

### PLAINTIFF, VERIZON COMMUNICATIONS, INC.:

Verizon Field Supervisor

### MassHighway:

MassHighway reserves the right to call any witness identified by any party in the matter and to supplement this witness list in a reasonable time prior to trial. For example, but not limited to the following example, MassHighway may wish to further designate presently unnamed current or former employees of the parties that the outstanding discovery from Conrail may identify.

### VI.    EXPERT WITNESSES

### PLAINTIFF, GLEN A. BURKE

### Jack Winslow, P.E.

31

The Plaintiff anticipates calling Jack Winslow, a Registered professional engineer, formerly employed by the Commonwealth of Massachusetts, Department of Public Works, who has visited and inspected the accident site of the collapsed retaining wall at Palmer, Massachusetts. Mr. Winslow inspected the accident site on December 20, 1999 and again on June 2, 2000. Mr. Winslow has opined that the subject collapsed retaining wall was not constructed in accordance with the governing Massachusetts Highway's Department Standards in effect in 1995 and 1996. Mr. Winslow was provided with a set of plans developed by Anderson-Nichols and photographs of the scene which he referred to while performing his inspections in Palmer, Massachusetts. Mr. Winslow will also opine that the granite blocks were not bedded in cement mortar as required by the subject contract, but merely pointed with a mortar mixture. He will also opine that the retaining wall did not contain an adequate number of weep holes which would have allowed proper water drainage behind the retaining wall, also Mr. Winslow will opine that the material used to backfill was not adequate to permit proper drainage thereby setting up a freeze thaw action causing the wall out to a point of failure. Mr. Winslow will also opine that there should have been an additional design plans executed for the construction of the retaining wall. Finally, Mr. Winslow will opine in accordance with his forensic report dated August 25, 2002 furnished to all counsel a copy attached and his deposition testimony taken by Daniel O'Connell and Sons and attended by all Defendants Counsel. As a result of the above findings, Mr. Winslow will opine that Daniel O'Connell and Sons and Anderson-Nichols and Company negligently performed the retaining wall contract so that the wall collapsed on May 21, 1998 causing the Conrail Train to derail in Palmer, Mass. Mr. Winslow will also opine that the wall had been moving from the time that

32

it was built until the time that it failed and should have been discovered through periodic inspections of the wall.

### Dr. Paul R. Minton

The plaintiff anticipates calling Dr. Paul R. Minton, a forensic cardiologist who has examined the treatment records of the Plaintiff, as well as examined Mr. Burke and has opined that Mr. Burke suffered a myocardial infarction on October 21, 1998 when he returned to work as a direct and proximate consequence of the train wreck of May 21, 1998. He will opine that on October 21, 1998 the symptoms of fear, anxiety, thinking of two things at once, dizziness, shortness of breath and the results of his s4 gallop and electrocardiogram among other things showed evidence consistent with a recent inferior wall myocardial infarction. Dr. Minton will testify as to what a myocardial infarction is and the symptoms ordinarily accompanying a MI. He will testify as to what an electrocardiogram, s4 gallop, bood pressure tests, pulse, and any other ordinarily used tests or symptoms are identified in the detection, treatment, diagnosis and or prognosis concerning heart conditions such as the one claimed by Mr. Burke.

### DEFENDANTS,

### CONRAIL'S EXPERTS

1.      Conrail expects to elicit expert testimony from George J. Kulik, PE, PC – Civil Engineer, Massachusetts Municipal Engineering Co., Inc., 12 Means Way, South Egremont, MA. Mr. Kulik was previously identified Conrail's *Answers to Interrogatories*, a copy of which is attached hereto as Exhibit "A."

Mr. Kulik is a Civil Engineer who will testify regarding Anderson-Nichols and Co.'s (ANCO) design of the bridge in question as well as the Massachusetts Highway Department's

33

(MassHighway) involvement with the design of the bridge. Mr. Kulik is expected to testify that, to a reasonable degree of engineering certainty, the design of the bridge ultimately used by ANCO, and which was employed by and demanded by MassHighway (namely the replacement of the abutment section only of the pre-existing gravity granite block wall) fell below accepted standards of engineering practice. More specifically, Mr. Kulik is expected to testify that the design ANCO and MassHighway ultimately employed was inadequate and unsafe, because, in addition to other reasons, the portion of the wall that was left at the southeast corner of the abutment which was to serve as a wing wall was structurally insufficient to withstand the forces and loads placed upon it by the reconstruction of the remainder of the bridge. He is also expected to testify that the design did not conform to engineering standards and was otherwise structurally deficient, inadequate and unsafe because it employed the use of a flying wing wall which did not adequately hold back the embankment behind the abutment and therefore placed additional loads on the granite block wing wall which it ultimately was unable to withstand. Mr. Kulik is further expected to testify that Daniel O'Connell & Sons (DOC) improperly reconstructed the wall such that it was allowed to fail and collapse. Mr. Kulik will also testify that the deficiencies in the site drainage design in the area of the failed wing wall caused the wall to collapse and therefore caused the derailment in question.

Mr. Kulik's opinions will be based on his review and analysis of the records which have been provided to him in this case, including but not limited to the transcripts of the depositions, the contract documents, the plans prepared by ANCO, the design calculations,

photographs taken of the bridge both before and after the reconstruction as well as his review of the documents

produced in discovery in this case. He will also base his opinions on his experience, education and training as a professional civil engineer. A copy of Mr. Kulik's Curriculum Vitae is attached hereto as Exhibit "B."

    2.      Conrail also hereby identifies Dr. Garcia, and joins in ANCO's designation of Dr. Garcia's opinions.

### DANIEL O'CONNELL'S SONS, INC. 'S EXPERTS

O'Connell anticipates calling Richard Hartman, Ph.D. P.E., as an expert witness at the trial of this case. It is expected that Dr. Hartman will testify on the standard of care owed by ANCO and MassHighway, in the design of the subject bridge, and the proximate cause of the accident. Dr. Hartman is expected to testify that the incorporation of the existing granite block wall fell below accepted standards of engineering and design, and was inadequate and unsafe because the wall was structurally incapable of supporting the loads placed upon it by the soil it was intended to retain. Dr. Hartman is also expected to testify that ANCO failed to adequately consider the consequences of retaining the granite wall in the design of the new bridge and approaches and deviated from its responsibility, as design engineer, to protect the safety of the public and to consider the adequacy and safety of the entire project --- regardless of whether it perceived its responsibility as being limited only to certain other aspects of the project. Dr. Hartman is expected to opine that as a proximate result of ANCO's and MassHighway's negligence the wall partially collapsed, which led to the subject accident. Dr. Hartman is also expected to testify that O'Connell disassembled and reassembled the wall in accordance with

35

directives from MassHighway. It is expected that Dr. Hartman will base his opinion on his inspection of the site, his education, his training and experience, his review and analysis of materials produced in discovery between the parties, including but not limited to the plans, project diaries, a geotechnical report, extra work orders, contract documents and photographs.

### Expert Cardiologist

O'Connell refers and incorporates the identification of the cardiologist by ANCO and reserves the right to call that expert as well.

### MassHighway.

MassHighway has not yet determined whom, if anyone, it expects to call as expert witnesses at trial. MassHighway will amend this response, if necessary, at the appropriate time and provide ample notice to all parties.

### VII.   EXHIBITS

### PLAINTIFF, GLEN A. BURKE

a.   All medical records, lab reports, medical test result, EKG reports

b.   All employment records

c.   Various photographs of the crash site before and after the crash

d.   Contracts between the parties

e.   Vital Statistics of the United States Life Expectancy tables

f.   Town of Palmer file regarding south main street bridge

g.   Northern Construction Documents

h.   Plans, drawings and specifications of the Massachusetts Highway Department

36

i.      Plans, drawings and specifications of Anderson-Nichols

j.      Statements of the Plaintiff

k.      Weather reports for the months of April and May 1998

l.      The preliminary structures report August 1993

m.      Various Daily reports of Stephen Potorski

### DANIEL O'CONNELL'S & SONS, INC.

O'Connell may seek to introduce some or all of the following documents:

No. 1.  Contract for State Highway Work.

No. 2.  Standard Specifications for Highways and Bridges, 1988.

No. 3.  Supplemental Specifications to the Blue Book

No. 4.  Mass. Highway Boston, Bridge Design Document entitled Southeast Proposed
        Retaining Wall, Preliminary Estimate of Quantities, EWO 099-200-010.

No. 5.  Mass. Highway Boston, Bridge Design Document Southeast Proposed
        Retaining Wall, Design Calculations.

No. 6.  Mass. Highway Bridge Section, Project Bridge P-1-27.

No. 7.  Mass. Highway Department Structures Inspection Field Report Damage
        Inspection Date: 5-21-98.

No. 8.  Photographs.

No. 9.  Plans, dated June 18, 1994.

No. 10.  Anderson-Nichols Plans.

37

No. 11.   Field Reports.

No. 12.   Structures Inspection Field Report, Massachusetts Department of Public Works, Date of Inspection: October 22, 1987.

No. 13.   Inspection August 17 and 18, 1994.

No. 14.   Routine Inspection Report, dated November 7, 1995.

No. 15.   Routine Inspection Report, dated November 24, 1997.

No. 16.   Routine Inspection Report, dated November 23, 1999.

No. 17.   Bridge Rating Report.

No. 18.   Letter 11/30/93 with Attachments.

No. 19.   Preliminary Structures Report.

No. 20.   Letter dated 3/7/95 with Attachments.

No. 21.   Letter dated April 22, 2003.

No. 22.   Handwritten notes.

No. 23.   Bridge Plans.

No. 24.   Memorandum dated April 1, 1999.

No. 25.   Field Notes.

No. 26.   Project Schedule.

No. 27.   Handwritten Diagrams.

No. 28.    Letter to Homer Perkins from Chet Parzych of 3, August, 1995 with attachments.

No. 29.    Interoffice Memorandum to Eric Botterman from Tom Hoey.

No. 30.    Soil Density Test Report.

No. 31.    Letter to Paul Ugolini from Chet Parzych with attachments.

No. 32.    Transcript of Design Public Hearing.

No. 33.    Project Logs.

No. 34.    Topographical Documents.

No. 35.    Project Correspondence.

No. 36.    Extra Work Orders.

No. 37.    Soil Compaction Documents.

No. 38.    Boring Logs and Documents.

No. 39.    Agreement Between Conrail and Massachusetts Highway Department.

No. 40.    Anderson Nichols Contract with Massachusetts Highway Department.

No. 41.    Conrail Inspection Reports.

No. 42.    Project Logs and Daily Notes of all Parties.

No. 43.    Interoffice Memos.

No. 44.    Anderson Nichols – Project Records.

No. 45.   Conrail Project Records.

No. 46.   Massachusetts Highway Department's Project Records.

No. 47.   Daniel O'Connell's Sons, Inc. Project Records.

O'Connell reserves the right to introduce additional documents at the trial in this

matter.

### MassHighway

In addition to the exhibits described by the other parties, MassHighway may seek to

introduce exhibits presently undesignated.  For example, but not limited to the following

examples, MassHighway may wish to introduce exhibits that the outstanding discovery from

Conrail may identify and the court's decision on MassHighway's motion for summary

judgment may indicate are relevant.  MassHighway will amend this response, if necessary, at

the appropriate time and provide ample notice to all parties.  This response should not be

interpreted as to mean that MassHighway agrees to the admissibility of any of the exhibits

presently designated by any of the parties.

### PLAINTIFF, VERIZON COMMUNICATIONS, INC.

Damage reports

Work orders

Work logs

Salvage reports

Field plans/diagram

Pictures

## VIII.  ESTIMATED LENGTH OF TRIAL

30 days

## IX.  POSSIBILITY OF SETTLEMENT

### A.    THE PLAINTIFF'S CASE:

The plaintiffs have received $30,000.00 in settlement of their claims against MassHighway.  The plaintiffs' most recent demand of the remaining defendants is $750,000.00, although they have expressed a willingness to settle for $350,000.00.  The defendants have made no offer and have requested the plaintiffs to make a more reasonable demand.

### B.    Conrail's Case:

Conrail has demanded full reimbursement of its losses.  None of the defendants have made an offer.

### C.    MassHighway:

MassHighway settled all claims filed by Glenn and Joanne Burke against MassHighway.  MassHighway's latest offer to settle the claims filed by Verizon against MassHighway was $1,500.  Finally, neither Conrail, Daniel O'Connell & Sons, nor

41

Anderson-Nichols have made any offers to settle the claims filed by MassHighway against those parties.

The parties have been awaiting the decision on the Summary Judgement motion presently pending with the court.

Respectfully submitted,

The plaintiffs,                                    The defendant,

By their attorneys,                              Daniel O'Connell's Sons, Inc.

                                                        By their attorneys

_____          _____
James F. Freeley, Jr, Esq.                    Vincent L. DiCianni, BBO#123430
Freeley & Freeley                               John J. McGivney, BBO#333510
BBO#178920                                      Rubin and Rudman, LLP
Christopher H. Mingace Esq.               50 Rowes Wharf
BBO#556834                                      Boston, MA 02110
Mingace & Heineman, P.C.                  (617) 330-7000
284 Union Avenue
Framingham, MA 01702
(508) 626-8500
BBO #556841

The Defendant/Third Party Plaintiff               The plaintiff
Consolidated Rail Corporation,                    Verizon Communications, Inc.,
                                                                f/k/a Bell Atlantic

By Its Attorneys,                                       By Its Attorney,

_____          _____
Michael B. Flynn, BBO #559023              Sheryl J. Dennis/BBO #556283
Bethany M. Machacek, BBO #657237       Fields and Dennis, LLP
FLYNN & ASSOCIATES, P.C.                 20 Pickering St.
400 Crown Colony Drive                        Needham, MA 02492
Suite 200
Quincy, MA 02169
(617) 773-5500

The Massachusetts Highway Department

By its Attorney,

THOMAS F. REILLY

ATTORNEY GENERAL

Ranjana Chand Burke, B.B.O. No. 638672
Joseph Callanan, B.B.O. No. 648397
Assistant Attorneys General
Government Bureau/Trial Division
200 Portland Street, Third Floor
Boston, Massachusetts 02114
(617) 727-2200 ext. 3337

Dated: April 29, 2004

44