UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH J. DIBENEDETTO,<br>        Plaintiff,<br><br>vs.<br><br>NATIONAL RAILROAD PASSENGER<br>CORPORATION,<br>        Defendant. | CIVIL ACTION NO.:  04-10570-RCL |

## JOINT PRE-TRIAL MEMORANDUM

### I.    TRIAL COUNSEL:

For the plaintiff, Joseph J. DiBenedetto:

Don P. Palermo, Esq.
Hannon & Joyce
The Public Ledger Building, Suite 1000
150 S. Independence Mall West
Philadelphia, PA 19106
(215) 446-4460

For the defendant, AMTRAK:

Michael B. Flynn, Esq.
John E. Young, Esq.
Flynn & Associates, P.C.
400 Crown Colony Drive
Suite 200
Quincy, MA 02169
(617) 773-5500

Michael J. McDevitt
Lawson & Weitzen, LLP
88 Black Falcon Avenue
Suite 345
Boston, MA 02210
(617) 439-4990
Local Counsel

### II.    PARTY POSITIONS:

#### A.    Plaintiff

Plaintiff alleges that he sustained cumulative trauma injuries to his right wrist as a result of his employment as a carman with AMTRAK since 1976, resulting in two wrist surgeries. Plaintiff claims that Defendant failed to provide a safe place to work, including adequate tools and equipment, in violation of the Federal Employers' Liability Act (FELA), 45 U.S. §§51-60. In addition, Defendant drastically reduced the workforce over the course of Plaintiff's employment, which required more work to be performed by the Plaintiff.  Plaintiff also avers that Defendant failed to provide a timely and adequate ergonomic program to prevent cumulative

trauma injuries.

Following each of his surgeries, Plaintiff was out of work while he underwent an organized rehabilitation program, and received benefits from the Railroad Retirement Board (RRB) UnumProvident. As a result, Plaintiff sustained approximately $44,518.40 in wage loss (exclusive of overtime) and has a RRB lien in the amount of $13,210.62 and a UnumProvident lien totaling $11,060.65.

### B.    Defendant

The plaintiff cannot prove that AMTRAK's negligence caused his alleged injury. Expert testimony is necessary to make this connection and the plaintiff has failed to disclose a liability or medical expert and is foreclosed from doing so pursuant to the Federal Rules of Civil Procedure and the Court's orders. The lack of expert testimony is fatal to the plaintiff's case.

In his *Complaint*, the plaintiff claims that, as a result of his employment with AMTRAK, he has occupational carpal tunnel syndrome. The physician who treated the plaintiff and conducted his surgeries (styloidectomy—removal of bone spur; carpectomy—surgical removal of three of the bones of the carpas), Dr. Jessie Jupiter ("Dr. Jupiter"), has diagnosed intercarpal arthritis but not carpal tunnel syndrome ("CTS"). In fact, no doctor has diagnosed CTS, and there are no objective findings of same (such as electrodiagnostic testing).

In addition, Dr. Jupiter has not expressed, in the course of his normal care and treatment of the plaintiff, any opinion that the plaintiff's work activities caused the plaintiffs arthritis. However, in a letter recently sent to plaintiff's counsel, he stated that the plaintiff's arthritis was "precipitated" by his work activities. The defendant has moved to exclude this "opinion" on the grounds that: (1) this opinion goes beyond Dr. Jupiter's care and treatment; (2) Dr. Jupiter was not disclosed in a timely or adequate fashion; and (3) in any event, this opinion does not meet the requirements set forth in R. Evid. 702 and Daubert v. Merrill-Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). This motion is currently pending.

With respect to the plaintiff's alleged repetitive stress injury the defendant submits that it provided the plaintiff with a reasonably safe workplace. The defendant will submit evidence pertaining to their efforts, as railroad employers, aimed at providing a reasonably safe workplace and also will submit evidence pertaining to the relative safety of their workplace, and workplaces in the railroad as compared to other industries. The plaintiff was charged with the responsibility to ensure that the tools he and other carmen used were safe and properly maintained. He never formally complained to either AMTRAK or his union about any of the tools with which he worked or the safety of his workplace, and he himself has admitted that the tools he used during his employment with the defendant were not defective, but were suitable for their intended uses.

The defendant will also present evidence that there are no peer-reviewed articles of controlled studies which: (1) conclusively prove a causal relationship between repetitive occupational activities and repetitive stress illnesses; and (2) even establish a dose-response relationship between any so-called "risk-factor" and repetitive stress injuries. Most significantly, the defendants will present evidence that a recent study authorized by Dr. James Cosgrove,

2

conclusively proves that there is no causal relationship between railroad work and repetitive stress injuries.

In addition to the plaintiff's failure to prove causation, there is extensive medical evidence in this case to suggest that any injury to the plaintiff's wrist was caused by incidents unrelated to the plaintiff's employment with AMTRAK. Most notably, the plaintiff was involved in a motor vehicle accident in 1994 in which the plaintiff injured his right wrist. An x-ray dated 3/3/01 demonstrates a traumatic wrist injury and an old fracture of the scaphoid of the radius (i.e. the precise location of Dr. Jupiter's surgeries).

Even if the plaintiff had an expert to testify that his arthritic wrist was caused by his working conditions at AMTRAK, any expected testimony on this issue would have to be excluded for failure to comply with Fed. R. Civ. P. Rule 702 and/or Daubert v. Merrill-Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

It is also the position of the defendant that the plaintiff cannot meet his burden of proof because he cannot submit the requisite expert testimony. Specifically, the defendant expects that the testimony of the plaintiff's experts, Dr. Jupiter and Mr. Andres, should be excluded because, pursuant to Fed. R. Evid. Rule 702 and Daubert v. Merrill-Dow Pharmaceuticals, Inc., 509 U.S. 589, 113 S.Ct. 2786 (1993), any expert opinion that the plaintiff's arthritis was caused by his work-related activities is not reliable and therefore inadmissible. It is the defendants' position that any opinion that so-called "repetitive stress" injuries can be caused by any occupational task is inadmissible since this relationship is neither generally accepted in the relevant medical community nor is any opinion on this issue based on reliable scientific methodology. Furthermore, the plaintiff's experts opinions are based neither on "sufficient facts or data" nor principles and methods which have been applied reliably to this case. Courts have consistently excluded experts in repetitive stress cases where their opinions are not based on sufficient facts or data due to the expert's failure to adequately investigate the plaintiff's actual work history, personal risk factors and potential other causes.

As to damages, the defendant expects to show that the plaintiff has only missed two (2) short periods of work due to his injury, and that he has since 2003 been working full-time at the same rate of pay he was earning at the time of his first surgery. The defendant also expects to show that the plaintiff is not currently disabled to any extent.

## III.    FACTS NOT IN GENUINE DISPUTE:

- This action is brought under the Federal Employer's Liability Act, 45 U.S.C. §51 et seq;

- The defendants are common carriers by rail;

- The plaintiff, Joseph DiBenedetto ("plaintiff") has brought the present action under the provisions of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. 51 et seq., the Federal Safety Appliance Act ("SAA"), 45 U.S.C. 1 et seq. and the Locomotive Inspection Act ("LIA"), U.S.C. 22 et seq. against his employer,

defendant, National Railroad Passenger Corporation ("AMTRAK").

- The plaintiff has been employed by the defendant as a carman since the mid-1980's.

- A carman performs a variety of routine maintenance and repair tasks on railroad passenger cars, including changing brake shoes, changing out air hoses and installing and disconnecting electric cables.

## IV.    CONTESTED ISSUES OF FACT:

- The exact nature of plaintiff's duties during his employment with the defendants; specifically, what tasks he was required to perform, the frequencies of the tasks and what tools were employed to complete the tasks;

- Whether plaintiff has suffered the injuries complained of, the exact causation of these injuries, and whether they were pre-existing;

- Whether the plaintiff's alleged repetitive stress injuries were caused by the plaintiff's railroad activities;

- The extent and severity of plaintiff's injuries, if any;

- Whether the plaintiff is disabled;

- The extent of the plaintiff's alleged economic damages, if any;

- Whether the plaintiff has failed to mitigate his damages;

- Whether the defendant provided a reasonably safe workplace for the plaintiff; and

- The negligence, if any, of either party.

## V.    PENDING MOTIONS:

The defendants have filed the following motions, all of which are currently pending:

1.  *Motion In Limine To Preclude The Testimony Of The Plaintiff's "Expert" Witnesses;*

2.  *Motion In Limine To Preclude Dr. Jupiter From Providing Any Opinion Testimony At His January 5, 2006 Audio-visual Deposition;*

3.  *National Railroad Passenger Corporation's Motion In Limine To Preclude The Plaintiff From Offering Any Evidence On The Issue Of Causation.*

The following motion is currently before the court:

1.  *Defendant's Cross-Motion To Exclude Robert Andres From Testifying At Trial.*

## VI.    ISSUES OF LAW:

### A.    Plaintiff:

See section V above.

### B.    Defendant:

#### 1.    FELA Liability:

The defendant expects to prove that it provided the plaintiff with a "reasonably safe workplace" and thus did not violate the provisions of the Federal Employers' Liability Act, 45 U.S.C. 51 et seq. ("FELA"). Moreover, the defendant states that any alleged injuries sustained by the plaintiff were not a result of the plaintiff's employment with AMTRAK. Consequently, the defendant maintains that the plaintiff will be unable to meet his burden in proving each and every element of his FELA case. In order to recover under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. 51 et seq., the plaintiff must prove that the railroad was negligent. Tennant v. Peoria and Pekin Union Railway Co., 321 U.S. 29 (1944). A plaintiff in an FELA case is required to prove all of the "traditional common-law elements of negligence, including forseeability, duty, breach and causation." Moody v. Boston and Maine Corp., 921 F.2d 1, 3 (1st Cir. 1990); see also Davis v. Burlington Northern, Inc., 541 F.2d 182 (8th Cir. 1976) *cert denied,* 429 U.S. 1002 (1976); Robert v. Consolidated Rail Corporation, 832 F.2d 3 (1st Cir. 1987). The plaintiff must prove each of these elements by a fair preponderance of the evidence. Id. at 6. A FELA defendant is not required to provide a perfect or absolutely safe workplace; rather its duty is to provide only a reasonably safe place to work. Id. "Although the burden on a FELA plaintiff is not onerous, neither is it nonexistent, the plaintiff must present probative facts from which the negligence and the causal relation could reasonably inferred." Dessi v. Pennsylvania RR., 251 F.2d 149, 151 (3rd Cir. 1958), cert. denied, 356 U.S. 967 (1958).

#### 2.    Causation Under the FELA:

A plaintiff must not only prove the employer's negligence, but that the negligence was the actual and proximate cause of plaintiff's injuries. Chesapeake & Ohio Ry. v. Carnahan, 241 U.S. 241, 244 (1916). A FELA plaintiff has "the burden to show that his employer's negligence was a cause of his injury, and that this injury was sustained in the course of his employment for the railroad...." Green v. River Terminal Ry. Co., 763 F. 2d 805, 808 (6th Cir. 1985). FELA claims will be rejected where causation has not been established. Ellis v. Union Pac. R.R., 329 U.S. 649 (1947). "[A]lthough a plaintiff need not make a showing that the employer's negligence was the sole cause, there must be a sufficient showing (i.e., more than a possibility) that a causal relation existed." Moody v. Maine Central Railroad Co., 823 F.2d 693, 695 (1st Cir. 1987). The defendants acknowledge that an FELA plaintiff enjoys a relaxed standard of proof on the issue of causation. *See* Rogers v. Missouri Pacific R. Co., 352 U.S. 500,

506 (1957) (an FELA case will be submitted to a jury if the railroad's negligence "played any part, even the slightest, in producing the employee's injury"). However, the FELA plaintiff still bears the burden of presenting evidence from which a jury could conclude a "probable" or "likely" causal relationship as opposed to a merely "possible" one. Edmonds v. Illinois Central Gulf Railroad Co., 910 F. 2d 1284, 1288 (5th Cir. 1990); see also Dukes v. Illinois Central Railroad, 934 F. Supp. 939, 944 (N.D. Ill. 1996); Mayhew v. Bell Steamship Co., 917 F.2d 961, 963 (6th Cir. 1990); Moore v. Chesapeake and Ohio Ry. Co., 340 U.S. 573, 578, 71 S. Ct. 428 (1951).

The long-established standard of causation under FELA, set forth in numerous precedents of the United States Supreme Court, is that the plaintiff must prove that the railroad's "negligence was the proximate cause in whole or in part" of the employee's injury. Tennant v. Peoria & Pekin Union Ry., 321 U.S. 29, 32 (1944) (emphasis supplied). Because the statute provides that a railroad may be liable if the employee's injury or death "resulted ... in part from the [railroad's] negligence," 45 U.S.C. § 51, the jury may find the railroad liable even if there were other causes of the employee's injury or death. However, the Supreme Court has emphasized that the requirement of proximate causation must still be met: the railroad's conduct must be either "the sole or a contributory proximate cause." Coray v. Southern Pac. Co., 335 U.S. 520, 523 (1949). Accordingly, "to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act." Brady v. Southern Ry., 320 U.S. 476, 483 (1943). The Supreme Court has repeatedly reiterated the federal proximate cause rule under the FELA in numerous cases.[1]

The Supreme Court further elaborated the federal proximate-cause rule in Davis v. Wolfe, 263 U.S. 239 (1923). In that case, which involved a FELA claim based on the railroad's violation of the Safety Appliance Act,[2] the Court held that "an employee cannot recover" if the railroad's unlawful conduct "is not a proximate cause of the accident which results in his injury, *but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury.*" Id. at 243 (emphasis added). On the other hand, the employee may recover if such conduct was "a proximate cause of the accident, resulting in injury to him while in the discharge of his duty." Id.

---

[1] See, e.g., Lang v. New York Cent. R.R., 255 U.S. 455, 461 (1921) (reversing for lack of evidence of proximate cause); St. Louis-S.F. Ry. v. Mills, 271 U.S. 344, 347 (1926) (same); Northwestern Pac. R.R. v. Bobo, 290 U.S. 499, 503 (1934) (same); see also, e.g., St. Louis, Iron Mountain & S. Ry. v. McWhirter, 229 U.S. 265, 280 (1913); Davis v. Kennedy, 266 U.S. 147, 148 (1924); Minneapolis, St. Paul & Sault Ste. Marie Ry. v. Goneau, 269 U.S. 406, 409-10 (1926); New York Cent. R.R. v. Ambrose, 280 U.S. 486, 489 (1930); Swinson v. Chicago, St. Paul, Minneapolis & Omaha Ry., 294 U.S. 529, 531 (1935); Brady v. Terminal R.R. Ass'n, 303 U.S. 10, 15 (1938); Tiller v. Atlantic Coast Line R.R., 318 U.S. 54, 67 (1943); Coray, 335 U.S. at 523 (1949); Urie, 337 U.S. at 195; O'Donnell v. Elgin, Joliet & E. Ry., 338 U.S. 384, 390 (1949); Carter v. Atlantic & St. Andrews Bay Ry., 338 U.S. 430, 434-35 (1949); Brown v. Western Ry. of Ala., 338 U.S. 294, 297-98 (1949).

[2] Violations of the Boiler Inspection Act and the Safety Appliance Act are actionable under FELA even in the absence of negligence, but the same "test of causal relation" applies in those cases as in negligence cases. Carter, 338 U.S. at 434; Louisville & Nashville R.R. v. Layton, 243 U.S. 617, 621 (1917) ("carriers are liable to employees in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them when engaged in the discharge of duty") (emphasis supplied).

### 3.   **Standard of Proof:**

Proof by a preponderance of the evidence of the defendant's negligence is a prerequisite to any recovery under the FELA. Tennant v. Peoria and Pekin Union Railway Co., 321 U.S. 29 (1944); Davis v. Burlington Northern, Inc., 541 F.2d 182 (8th Cir.), *cert denied*, 429 U.S. 1002 (1976); Nivens v. St. Louis Southwestern Railway Co., 425 F.2d 114 (5th Cir.), *cert denied*, 400 U.S. 879 (1970). The standard of care applied under the FELA is that of a person exercising ordinary care under the same or similar circumstances. Tiller v. Atlantic Coastline R. Co., 318 U.S. 54 (1943). Mere proof of injury or a dangerous workplace is not proof of an employer's negligence. Eaton v. L.I. R.R., 398 F.2d 738, 741 (2nd Cir. 1968). Although when an employee is injured due to an unsafe condition, a railroad employer is only liable "if its negligence played any part, even the slightest, in producing the employee's injury," the burden remains on the employee to prove the employer's negligence. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506 (1957). In this regard, statements that the plaintiff's burden of proof under the FELA is "slight" have occasionally been misconstrued. Specifically, the holding in Rogers, 352 U.S. 500, 506 (1957) does not support the view that FELA liability may be characterized "as one of slight negligence, minimal negligence, and even infinitesimal negligence." Such a view has been soundly criticized in FELA decisions in recent years. *See, e.g.*, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335-339 (5th Cir. 1997) (reference to word "slightest" in Rogers decision does not modify the concept of "negligence;" thus, duty of care owed by FELA and Jones Act employers retains usual and familiar definition of ordinary prudence, and does not impose a higher standard of care on defendants).

### 4.   **The FELA Does Not Impose Strict liability:**

Although the FELA is construed broadly, it does not impose strict liability on employers. Robert, 832 F.2d at 6. As stated by the Court in Conroy v. Conrail, 720 F.2d 221, 223 (1st Cir. 1983): "it is black letter law that a FELA plaintiff is not entitled to absolute security; the act, unlike Workmen's Compensation Statutes, does not make the employer an insurer .... It does not require absolute elimination of all dangers, but only contemplates the elimination of those dangers which could be removed by reasonable care on the part of the employer." Mere proof of an injury or a dangerous workplace is not proof of a railroad employer's negligence. Easton v. L.I.R.R., 398 F.2d 738, 741 (2nd Cir. 1968).

### 5.   **"Defective Tool" Cases Under the FELA:**

In cases such as the plaintiff's, where an employee was allegedly injured as a result of an unsafe condition, including the presence of foreign substances or defective tools, the employee must "show that the defendant had notice of the defect, either actual or constructive." Beeber v. Norfolk Southern Corp., 754 F. Supp. 1304, 1309 (N.D. Ind., 1990); see also Kaminski 200 F.2d at 4 ("Before defendant can be charged with negligence in failing to remedy the condition which caused plaintiff's injury, or failed to warn plaintiff of the existence of such a condition, it is necessary to establish that the defendant had actual knowledge of the condition, or, in the exercise of ordinary care, should have known of its existence."). The employee must show that: (1) an officer, employee or agent of the railroad was responsible, through negligence, for the

presence of the unsafe condition; or (2) at least one of such persons had actual knowledge of its presence before the accident; or (3) the unsafe condition had continued for a sufficient length of time to justify the inference that failure to know about it and remove it was due to want of proper care. Brown v. Cedar Rapids and Iowa City Ry. Co., 650 F.2d 159, 161 (8th Cir. 1981). The burden of proving such knowledge rests on the plaintiff: "[t]he presumption prevails, even after proof of the defect, that the railway company was not aware of its existence; and until it is shown that the railway company knew, or in the exercise of ordinary care should have known, of the defect, it is not charged with that knowledge. Beeber, 754 F.Supp. at 1389, *quoting* St. Louis R. Co. v. Ingram, 124 Ark. 298, 187 S.W. 452, 453 (1916), *aff'd*, 244 U.S. 647, 37 S.Ct. 741 (1917).

### 6.    Repetitive Stress Injury Cases Under the FELA:

A railroad's duty under the FELA is to use reasonable care in providing its workers with a reasonably safe workplace and in ensuring that the tools and equipment used by its employees are reasonably suitable and safe for the purpose for which they are intended to be used. Atlantic Coast Line Railroad Co. v. Dixon, 189 F.2d 525, 526 (5th Cir. 1951), *cert denied*, 342 U.S. 830 (1951). This duty does not require that the railroad furnish its employees with the latest, best or most perfect appliances with which to work, nor to discard standard appliances already in use upon the discovery of later improvements, provided those in use are reasonably safe. Atlantic Coast Line Railroad Co. v. Dixon, 189 F.2d at 526; *see also* Missouri Pacific R. Co. v. Aeby, 275 U.S. 426 (1928). An FELA defendant is not liable if it had no reasonable way of knowing about the hazard that caused the employee's injury. Peyton v. St. Louis Southwestern Railway Co., 962 F.2d 832 (8th Cir. 1992); *see also*, Williams v. Burlington Northern and Santa Fe Railway Co., 13 F.Supp.2d 1125, 1129 (D. Kansas 1998)(summary judgment granted in CTS case where no record that defendant knew or should have known any specific tools used or tasks performed were unsafe). Failure to educate an employee about CTS or to develop an ergonomic program does not breach an employer's duty under the FELA. *See* Williams v. Burlington Northern & Santa Fe RR Co., 13 F. Supp.2d 1125 (D. Kansas 1998); *see also*, Dent v. Consolidated Rail Corporation, 187 F.3d 635 (6th Cir. 1999)(railroad has no legal duty to train locomotive engineer to deal with impending rail crossing accidents). The defendant cannot be found negligent for failing to guard against above possibility of injury, illness or disease. Moody v. Maine Central Railroad Co., 823 F.2d 693 (1st Cir. 1981).

### 7.    Expert Testimony is Required:

In this case, the plaintiff's theory is that the defendant created an unreasonably unsafe workplace by providing him with non-ergonomic tools, and that he developed arthritis as a result of the repetitive activities of his job. However, the plaintiff has proffered no evidence, expert or otherwise, as to how the plaintiff's tools or work activities caused his arthritis. He has also failed to offer any evidence, by way of expert testimony or otherwise, as to how the plaintiff's tools were defective, the existence of safer tools or work procedures, or a description of how the tools with which the plaintiff worked adversely affected him. In a case such as this one, including issues and concepts beyond a lay person's common understanding, the plaintiff must present some expert that the plaintiff's alleged CTS or other injuries were caused by the defendant's negligence. Claar v. Burlington Northern Railroad Co., 29 F.3d 499, 503 (9th Cir. 1994). In

Claar, the court noted that where special expertise is necessary to draw a causal inference, expert testimony is necessary." "[W]hen the conclusion [of causation] is not one within the common knowledge, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn." 4 F. Harper, F. James, O. Gray, The Law of Torts, 269.

Likewise, in a case such as this, involving complex medical issues, where the causal connection is not obvious to a layman, "such as a broken leg from being struck by an automobile," expert testimony is required. Schmaltz v. Norfolk & Western Ry., 896 F. Supp. 180 (N.D.Ill. 1995) *quoting* Moody v. Maine Central Railroad Co., 823 F. 2d 693, 695 (1st Cir. 1987). The plaintiff does not have an expert to testify that his alleged arthritis was caused by the defendant's negligence. The plaintiff cannot prove causation or negligence in this case.

In order for a plaintiff to prevail under the FELA, either the plaintiff's treating physician or medical expert must be able to articulate that a causal nexus exists between Defendant's negligence and plaintiff's injury: "[A] medical expert must be able to articulate that there is more than a mere possibility that a causal relationship exists between the defendant's negligence and the injury for which plaintiff seeks damages." Mayhew v. Bell S.S. Co., 917 F.2d 961, (6th Cir. Ohio 1990). In accord with this principle, courts have similarly dismissed FELA actions where, as here, the plaintiff failed to present expert medical testimony establishing a causal nexus between plaintiff's alleged injury and his occupationally related activities. Moody, 832 F. 2d at 695.[3]

Pending before the court are two (2) motions pertaining to the exclusion of the expert witnesses. It is defendant's position, as expressed in these motions, that the plaintiff's experts should be precluded from testifying because: (1) they were neither identified nor disclosed in a timely or adequate manner; and (2) their expected opinions are inadmissible under Fed. R. Evid. 702 and the standards set forth in Daubert v. Merrill-Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). The defendant has also filed a motion to preclude any evidence on the issue of causation given the expected lack of expert testimony, since the issue of causation, in this case, must be elicited, if at all, through expert testimony.

The defendant expects to move for a directed verdict given that the plaintiff will be unable, as a matter of law, to meet his burden of proving the defendant's negligence, or that its negligence, if any, was a proximate cause of his arthritis.

## 8.    Payment of Medical Expenses:

Plaintiff is not entitled to recover damages for medical expenses covered by the plaintiff's insurance policy, the premiums for which were paid for by the railroad. Rogers v. Chicago &

---

[3] Applying the tenets of the FELA. Daubert, and its progeny to railroad cases where, as here, the alleged injury is a "repetitive stress" injury, federal trial courts across the country have dismissed actions summarily after concluding that plaintiff's proffered expert testimony is inadmissible for want of reliability and relevance. *See e.g.,* Doty v. Illinois Central Railroad Co., 162 F3d 803 (6th Cir. 1996); Stasior v. National Railroad Passenger Corp., 19 F.Supp. 2nd 835 (N. Ill. 1998); Williams v. Burlington Northern & Santa Fe Railway Co., 13F.Supp. 2d 1125 (D. Kan. 1998); Magdaleno v. Burlington Northern Railroad & Santa Fe Railway Co., 5 F.Supp. 1566 (D. Col. 1998); Dukes, 934 F.Supp. at 944; Zawacki v. National Railroad Passenger Corp., 914 F.Supp. 1566 (N.D. Ill. 1996); Schmaltz, 896 F.Supp. 180.

Northwestern Transportation Co., 375 N.E.2d 952 (1978); Nelson v. Pennsylvania Central Railroad Co., 415 F.Supp 225(1976). The plaintiff may not recover from medical expenses paid pursuant to the plaintiff's insurance policy covered by the railroad, but may introduce evidence concerning the amount of medical bills or expenses; defendant railroad may thereafter introduce evidence regarding the expenses that have been paid. Brice v. National Railroad Corporation, 664 F.Supp.20 (1987). Some courts have held that a plaintiff cannot recover medical expenses paid by the railroad's health insurance and, therefore, the amounts of medical bills and expenses, bare little, if any relevance to the plaintiff's claim and were properly excluded from evidence. Varhol v. National Railroad Passenger Corp., 909 F.2d 1557 (7th Cir. 1990). 45 U.S.C. §55 provides that a railroad may set off in a FELA suit "any sum it has contributed and paid to any insurance, relief benefit or indemnity that may have been paid to the injured employee on account of the injury or death for which said action was brought."

### 9.    Payment of Wage Continuation Benefits:

A railroad defendant is entitled to an offset for sums paid for medical treatment and for salary continuation under a long term disability plan. Anglim v. Missouri Pacific R.Co., 832 S.W.2d 298 (Mo. Banc 1992).

### 10.    Prejudgment Interest:

Prejudgment interest is not permitted in a FELA action for injuries. Morgan v. Monessen Southwestern Railway Co., 108 S.Ct. 1837 (1988).

### 11.    Proper Measure of Damages:

Net wage loss is the proper measure of damages. Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 23 (1983); Norfolk & Western Railway Co. v. Liepelt, 444 U.S. 490 (1980); Cazad v. Chesapeake & Ohio Railway Co., 404 N.E.2d 320 (Ill. App. 1980). Only after tax, or "net" income, is the proper measure of damages. Norfolk & Western Railway Co. v. Liepelt, 444 U.S. 490 (1980).

Not only must federal income tax be deducted from any future wage loss calculation, but social security tax or railroad retirement tax must also be deducted, along with any state income tax. Pickel v. International Oilfield Divers, Inc., 791 F.2d 1237 (5th Cir. 1986); Matador v. Ingram Tank Ships, Inc., 732 F.2d 475 (5th Cir. 1985).

Plaintiff is required to deduct from his gross earnings not only taxes, but also the business costs and expenses he will not incur as a result of his alleged injuries. These costs and expenses include union dues, transportation expenses, and special work clothing or safety equipment. Jones & Laughlin Steel Corp. v. Pfeifer, 732 F.2d 475 (5th Cir. 1985).

### 12.    Future Pain and Suffering:

The FELA requires a reduction of future pain and suffering to present value. St. Louis S.W. Ry. Co. v. Dickerson, 470 U.S. 409 (1985).

### 13.    **Statute of Limitations:**

The plaintiff's claims are barred by the applicable limitations period. It is well-settled federal law that under the FELA a cause of action is barred unless it is filed within three (3) years from the date the action accrues. 45 U.S.C. § 56.[4] This limitation period applies not only to injuries allegedly sustained in a single traumatic episode, but also to injuries allegedly sustained over a long period of time. Albert v. Maine Central Railroad Co., 905 F.2d 541 (1st Cir. 1990); *see also* Williams v. Southern Pacific Transportation Company, 813 F. Supp. 1227 (S.D. Miss 1992); Urie v. Thompson, 337 U.S. 163 (1949); Fries v. Chicago & Northwestern Transportation Company, 909 F.2d 1092 (7th Cir. 1990). In order to determine when a cause of action accrues in such cases, courts have applied the "discovery rule" first adopted by the Supreme Court in Urie v. Thompson. Under this rule, a cause of action accrues when the plaintiff knew or, in the exercise of reasonable diligence should have known, of his condition and its governing cause. Urie, 337 U.S. at 169-170; see also Indus. Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994); Mounts v. Grand Truck RR., 198 F.3d 578 (6th Cir. 2000).

The discovery rule imposes an affirmative duty on the plaintiff to investigate the potential cause of his injury and requires only a finding that a plaintiff should have known of an injury, not that he possess actual knowledge of the injury and its cause:

> Whether the injury is caused by a discrete, discernable act or inflicted over time with an unknowable onset date does not affect a court's evaluation of the accrual date in terms of the injury...the Urie Court sought to ameliorate the harshness of statutes of limitations when the injury is hard to detect at its inception. In order to do so the Court adopted the rule that in such circumstances that plaintiff cannot be said to know of the injury - although incurred or instigated at an earlier point in time - until it manifests itself to the individual. What the Urie Court did not do was provide an escape for plaintiffs who are aware some type of injury exists yet who choose to ignore it by failing to seek diagnosis and investigating the cause....the tolling permitted by Urie only extends the limitations period to the date when the injury manifests itself, not beyond...[U]pon experiencing symptoms a plaintiff has a duty to investigate both the injury and any suspect cause..."[T]o allow a plaintiff to unilaterally postpone the running of the statute of limitations by negligently failing to investigate the fact of and cause of his injury would thwart the legislative intent of...§ 56." Moreover, as stated above, our case law holds explicitly to the contrary and only requires a finding that plaintiff should have known of an injury, not that he possesses actual knowledge.

Fries, 701 F.2d at 1095-1096 (citations omitted). A medical diagnosis that an injury is occupationally related is likewise not necessary. Albert, 905 F.2d at 541; Whitman v. CSX

---

[4] The limitation period set forth in 45 U.S.C. § 56 is a "condition precedent" to recovery. Huett v. Illinois Central Gulf Railroad Co., 26 Ill. App 3d. 494, 498 (5th Dist. 1991) *citing* Fredman Brothers Furniture Co. v. Department of Revenue, 109 Ill. 2d 202 (1985). As the limitation period is a "condition precedent," the plaintiff bears the burden of pleading and proving that his claim has been brought in a timely fashion. *See* Emmons v. Southern Pacific Transportation Company, 701 F.2d 1112, 1117-1118 (5th Cir. 1983); Fredman, 109 Ill. 2d at 202.

Transportation Inc., 887 F.Supp. 983, 992 (E.D. Mich. 1995). Courts have consistently held that the manifestation of symptoms alone is enough to trigger the plaintiff's duty to investigate all possible causes. *See e.g.*, Tolston v. National Railroad Passenger Corporation, 102 F. 3d 863, 866 (7th Cir. 1996).[5] Moreover, "the injured plaintiff need not be certain which cause, if many are possible, is the governing cause, but *only have need or have reason to know of a potential cause. "* Fries*, 701 F.2d at 1095;* see also Whitman, 887 F.Supp. at 992, Tolston; 102 F. 3d at 866; Picard v. Elgin Joliet & Easton Ry. Co., 750 F. Supp. 372, 374 (N.D. Ind. 1990).

The plaintiff here has been complaining to his doctors since at least August 1999 about hand and wrist symptoms consistent with carpal tunnel syndrome. More specifically, he testified that he had been experiencing numbness and tingling sensations while using a hammer at work and that this had been occurring for years prior to 2000. These symptoms are also consistent with carpal tunnel syndrome.

The plaintiff also admitted at his deposition that he used the same tools since he began his employment as a carman with AMTRAK in the mid-1980's. All of these tools, and the tasks the plaintiff performed, involved the use of his hands and wrists. Under these circumstances, the plaintiff had an affirmative duty to investigate the potential causes of his wrists problems which accrued as early as August 1999. The plaintiff failed to investigate his potential cause of action in a timely fashion - he did not file his complaint until September 20, 2002, more than three (3) years after his claim accrued. Consequently, the plaintiff failed to bring his action within the limitations period set out in 45 U.S.C. § 56. As a result, his claims in these regards must fail as a matter of law. The defendant expects to file a motion for directed verdict on this issue.

## 14.    The Admissibility of Collateral Source Benefits:

The plaintiff received collateral source benefits from the Railroad Retirement Board (an occupational disability) and also from a private insurance company. It is the defendant's position that evidence of the receipt of these benefits is admissible. Pursuant to McGrath v. Conrail, 136 F. 3d 838 (1st Cir. 1998), collateral source benefits are admissible on the issues of credibility, motivation to return to work and mitigation of damages. In McGrath, the First Circuit Court of Appeals expressly recognized that the collateral source rule "is not absolute and courts have carved out exceptions to the collateral source doctrine." Id. at 840. The Court, in ruling that the admission of collateral source evidence presented little likelihood of prejudice to the plaintiff, stated that "'if there is little likelihood of prejudice and no strong potential for improper use, and a careful qualifying jury instruction is given, then receipt of compensation benefits may be admissible for the limited purpose of proving another matter.'" Id. at 841 quoting Simmons v. Hoegh Lines, 784 F.2d 1234, 1236 (5th Cir.1986); see also, Moses v. Union Pacific Railroad, 64 F.3d 413 (8th Cir.1995)(allowing collateral source evidence where plaintiff's case itself has made the existence of such evidence of probative value); Santa Maria v.

---

[5] In Tolston, the plaintiff argued that while she knew she had knee problems, no one told her these problems could be have been caused by her railroad occupation, she herself never attributed her problems to work and, therefore, the limitations period was tolled. Id. The Seventh Circuit rejected the plaintiff's argument because "[i]t comes close to suggesting that only actual knowledge of cause is enough to make the claim 'accrue' - a proposition we (have) subsequently rejected.... At some point, persons with degenerative conditions have to investigate cause." 102 F. 3d. at 886.

Metro-North Commuter Railroad, 81 F.3d 265 (2nd Cir.1996)(holding collateral source evidence admissible if plaintiff puts financial status at issue).  The Appeals Court, in McGrath, also distinguished the U.S. Supreme Court's decision in an earlier, seemingly conflicting FELA case, Eichel v. New York Central R.R., 375 U.S. 253 (1963), as pre-dating the adoption of the Federal Rules of Evidence and as not mandating a rule that collateral source evidence should be treated as being per se inadmissible.  McGrath 136 F.3d, supra, at 841; see also DeMedeiros v. Koehring Co., 709 F.2d 734, 740 (1st Cir.1983).  The First Circuit concluded that the Supreme Court in Eichel "simply determined that the district court abused its discretion because the prejudicial impact of the evidence outweighed its probative value.  Here, we come to the opposite conclusion." McGrath, 136 F.3d, at 841.  The McGrath decision is also consistent with Massachusetts case law which has  "long recognized that in some circumstances, evidence of collateral source income may  be admissible, in the discretion of the trial judge, 'as probative of a relevant proposition, say 'control' or credibility of a particular witness.'"  Corsetti v. Stone Co., 396 Mass. 1, 17 (1985)(emphasis in original, citation omitted).

## VII.    ESTIMATED LENGTH OF TRIAL:

The parties estimate that the trial of this case will take 4-5 days.

## VIII.   WITNESS LISTS:

Attached as Exhibit "A." please find plaintiff's witness list.  Attached as Exhibit "B," please find defendant's witness list.

## IX.    PROPOSED EXHIBITS:

1.    Plaintiff's Complaint
2.    Plaintiff's Answers to Interrogatories and Responses to Requests for Production of Documents
3.    Plaintiff's AMTRAK personnel file
4.    Plaintiff's AMTRAK medical file
5.    Plaintiff's Railroad Retirement Board file
6.    Jesse B. Jupiter, M.D. medical records
7.    Jesse B. Jupiter, M.D. narrative report

    A.    AMTRAK objects to the admission of Dr. Jupiter's narrative report.

8.    Jesse B. Jupiter, M.D. operative reports
9.    Jesse B. Jupiter, M.D. medical bills
10.   Jesse B. Jupiter, M.D. curriculum vitae

    B.    AMTRAK objects to the admission of Dr. Jupiter's curriculum vitae.

11.   Jesse B. Jupiter, M.D. deposition transcript

    C.    AMTRAK, objects to the admission of Dr. Jupiter's deposition transcript.

12.     Jesse B. Jupiter, M.D. videotape deposition

        D.      AMTRAK, objects to the admission of the videotape of Dr. Jupiter's
                deposition.

13.     The plaintiff's medical records from Dr. Mark Gebhardt
14.     Diagram and/or model of the human hand/wrist

        E.      AMTRAK objects to the admission of a diagram/model of the human
                hand/wrist.

15.     Leonardo Physical Therapy medical records and bills
16.     HealthSouth Sports Medicine & Rehab medical records and bills

        F.      AMTRAK objects to the admission of HealthSouth Sports Medicine &
                Rehab medical records and bills.

17.     Robert O. Andres, Ph.D. expert report

        G.      AMTRAK objects to the admission of Dr. Andres' expert report. This
                report has not yet been produced.

18.     Robert O. Andres, Ph.D. curriculum vitae

        H.      AMTRAK objects to the admission of Dr. Andres' curriculum vitae. This
                document has not yet been produced.

19.     Videotape and/or photographs of site inspection

        I.      AMTRAK objects to the admission of any videotape and/or photographs
                of the site inspection. These materials have not yet been produced.

20.     AMTRAK Job Description for Carman

        J.      AMTRAK objects to the admission of the job description for a carman.

21.     Plaintiff's W-2 Wage & Tax Statements and/or BA-6 forms
22.     Pamphlet: Preventing Cumulative Motion Injuries – 1989

        K.      AMTRAK objects to the admission of Pamphlet: Preventing Cumulative
                Motion Injuries – 1989.

23.     NIOSH Musculoskeletal Disorders and Workplace Factors, July, 1997 Chapter 5

        L.      AMTRAK objects to the admission of NIOSH Musculoskeletal Disorders

and Workplace Factors, July, 1997 Chapter 5

24.   Deposition of Plaintiff

    M.   AMTRAK objects to the admission of the plaintiff's deposition transcript.

25.   *"Carpal Tunnel Syndrome in Railroad Workers,"* American Journal of Physical Medicine & Rehabilitation, 2002; 81:101-107
26.   AMTRAK's Safety and Operating Rules
27.   AMTRAK"s Transportation Rules
28.   Plaintiff's insurance claim forms

    N.   Plaintiff objects to the admission of his insurance claim forms.

29.   Releases pertaining to the plaintiff's prior injury claims

    O.   Plaintiff objects to the admission of prior releases.

30.   Medical literature on the causes of arthritis

## X.   PROPOSED JURY INSTRUCTIONS:

Attached as Exhibit "C," please find plaintiff's proposed jury instructions. Attached as Exhibit "D," please find defendant's proposed jury instructions.

## XI.   PROPOSED VOIR DIRE:

Attached as Exhibit "E," please find plaintiff's proposed voir dire. Attached as Exhibit "F," please find defendant's proposed voir dire.

Respectfully submitted,
The plaintiff,
Joseph J. DiBenedetto,
By his attorneys:


Don P. Palermo, Esq.
Hannon & Joyce
The Public Ledger Building, Suite 1000
150 S. Independence Mall West
Philadelphia, PA 19106
(215) 446-4460


Michael J. McDevitt
Lawson & Weitzen, LLP
88 Black Falcon Avenue
Suite 345
Boston, MA 02210
(617) 439-4990
Local Counsel


DATED:  December 30, 2005
G:\F & A\CASE FILES\AMTRAK\occupational\DiBenedetto\Trial\Pre-Trial Memo.doc

Respectfully submitted,
The defendant,
National Railroad Passenger
Corporation,
By its attorneys:


Michael B. Flynn, BBO #559023
John E. Young, BBO #654093
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive
Suite 200
Quincy, MA 02169
(617) 773-5500
(617) 773-5510 (facsimile)

# EXHIBIT A

## PLAINTIFF'S WITNESS LIST

1.     Joseph DiBenedetto

2.     Louise DiBenedetto

3.     Jesse B. Jupiter, M.D.

4.     Plaintiff's present and former co-workers, including, but not limited to, Lee Wilson, Eddie White, John White, Robert White, Roger Rodriquez, J. J. DiBlasi, Jr., John Hutchins and/or Frosty Forrestal.

5.     Plaintiff's current and former supervisors, including, but not limited to, John Veldhoven, Charlie Smith, Pete Finnegan, Bob Valley, Charlie Canes and/or Wilson Cruz.

6.     Stephen Gell, Amtrak Director of Occupational Claims

7.     Robert McLean, former Amtrak Medical Director

8.     Current Amtrak Medical Director

9.     Current Amtrak Safety Director

10.    Maryanne Letterio, Amtrak Nurse

# EXHIBIT B

## DEFENDANTS WITNESS LIST

### Factual:

1. Joseph DiBenedetto, 27 Western Avenue, Wakefield, MA;
2. Louise DiBenedetto, 27 Western Avenue, Wakefield, MA;
3. Stephen DiBenedetto, 27 Western Avenue, Wakefield, MA;
4. Jared DiBenedetto, 27 Western Avenue, Wakefield, MA;
5. Paul Coddum, c/o AMTRAK, 253 Summer Street, Boston, MA;
6. Joe Bandlow, c/o AMTRAK, 253 Summer Street, Boston, MA;
7. John White, c/o Mass Bay Commuter Rail, 89 South Street, 8th Floor, Boston, MA;
8. Lee Wilson, c/o AMTRAK, 253 Summer Street, Boston, MA;
9. J.J. DiBlasi, Jr., c/o AMTRAK, 253 Summer Street, Boston, MA;
10. John Hutchins, c/o AMTRAK, 253 Summer Street, Boston, MA;
11. Eddie White, c/o AMTRAK, 253 Summer Street, Boston, MA;
12. John Veldhoven, c/o AMTRAK, 253 Summer Street, Boston, MA;
13. Pete Finnegan, c/o AMTRAK, 253 Summer Street, Boston, MA;
14. Charlie Smith, c/o AMTRAK, 253 Summer Street, Boston, MA;
15. Wilson Cruz, c/o AMTRAK, 253 Summer Street, Boston, MA;
16. Robert Duncan, c/o AMTRAK, Wilmington, DE;
17. Thomas McCann, c/o AMTRAK, New York, NY;
18. A representative of UnumProvident Corporation, Boston, MA;
19. Bill McQuade, c/o Transportation Worker's Union, Local 2054, Boston, MA;
20. Any fact witness identified by the plaintiff.

### Medical:

21. Jesse Jupiter, M.D., c/o Mass General Hospital, 55 Fruit Street, Boston, MA
22. Mark Gebhardt, c/o Mass General Hospital, 55 Fruit Street, Boston, MA;
23. Sara Jackson, MSPT, c/o Leonardo Physical Therapy, 12 Bay St Ste 209 Wilmington, MA;
24. Dempsy Springfield, M.D., 5 East 98th, Street, New York, NY;
25. Bruce Watrous, M.D., 300 Quannapowitt Parkway, Wakefield, MA;
26. Seth Krum, M.D., 727 Welsh Road, Suite 111, Huntingdon Valley, PA;
27. Patricia MacFarlane, M.D., c/o Mass General Hospital, 55 Fruit Street, Boston, MA;
28. David I. Rosenthal, M.D., c/o Mass General Hospital, 55 Fruit Street, Boston, MA;
29. Susan V. Kattapuram, M.D., c/o Mass General Hospital, 55 Fruit Street, Boston, MA;
30. John J. Walsh, Jr., c/o Veteran's Hospital, 1 VA Center, Augusta, ME
31. Any medical witness identified by the plaintiff.

# EXHIBIT C

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS
Boston Division

| | | |
|---|---|---|
| JOSEPH J. DIBENEDETTO, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| NATIONAL RAILROAD PASSENGER CORPORATION, | : | |
| Defendant | : | NO. 04-10570RCL |

## **PLAINTIFF'S JURY INSTRUCTIONS**

The Plaintiff, Joseph J. DiBenedetto, by and through his attorneys, Hannon & Joyce, requests the following Jury Instructions:

JURY INSTRUCTION NO. 1:

Under the law and evidence, your verdict must be in favor of Plaintiff, Joseph J. DiBenedetto, and against the Defendant, National Railroad Passenger Corporation (AMTRAK).

JURY INSTRUCTION NO. 2:

This is not a criminal case in which the burden is to prove a case beyond any reasonable doubt. Rather, as in all civil cases, the burden on the Plaintiff is simply to prove his case by the fair weight or preponderance of the evidence. Burch v. Reading Co., 240 F2d 574 (3rd Circ. 1957) cert. denied. 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed. 914 (1957); United States v. Fabrizio, 193 F.Supp. 446 (DC, DE, 1961).

JURY INSTRUCTION NO. 3:

Perhaps the easiest way for you to understand the concept of burden of proof in a civil case, the proof of a case by the fair weight of the evidence, is this: That you consider all the evidence in the case and you ask yourselves: Is it more probable than not that the Plaintiff is entitled to win? If you say yes, it is more probable than not that the Plaintiff should win, then the Plaintiff should win. <u>Burch v. Reading Co</u>., supra; <u>U.S. v. Fabrizio</u>, supra.

JURY INSTRUCTION NO. 4:

Both the Plaintiff and the Defendant in this matter have agreed that at the time and place alleged in the Complaint, the Defendant was a common carrier by the railroad, engaged in interstate commerce. The Plaintiff and the Defendant in this matter have further agreed that the Plaintiff was then an employee of the Defendant, engaged in such commerce, and that the Plaintiff's right to recovery in this case is governed by the provisions of "The Federal Employers' Liability Act". <u>Shenker v. Baltimore & O.R. Co.</u>, 374 U.S. 1, 10 L.Ed. 2d 709, 83 S.Ct. 1667 (1963).

JURY INSTRUCTION NO. 5:

Specifically, the Federal Employers' Liability Act (FELA), 45 U.S.C. Sec. 51,

states, in pertinent part:

> Every common carrier by railroad while engaging in commerce between any of the states and territories, or between the District of Columbia and any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier, in such commerce, or in case of death of such employee, to her or her personal representative for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and if none, then of the next of kin dependent upon such employee for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.
>
> Any employee of a carrier, any part of whose duties as such employee shall be in the furtherance of interstate commerce; or shall, in any way, directly or closely and substantially, affect such commerce as above set forth shall, for the purpose of this Act be considered as being employed by such carrier, in such commerce, and shall be considered as entitled to the benefits of this Act and of an Act entitled, "An Act related to the liability of common carriers by railroad to their employees in certain cases". (App'd April 22, 1908) [45 U.S.C. Secs. 51 et seq.] as the same has been or may hereafter be amended (emphasis added).

45 U.S.C. Sec. 51.

JURY INSTRUCTION NO. 6:

Negligence is the breach of a standard of care due the Plaintiff, where a reasonable man (or railroad) could foresee that the breach thereof would cause harm to the Plaintiff.

Restatement (Second) Torts, Secs. 289.

JURY INSTRUCTION NO. 7:

Negligence can consist of either doing something that a reasonably careful person (or railroad) would not have done under those circumstances or it may consist of failing to do something which a reasonably careful person (or railroad) would do under those circumstances. As applied in the railroad context, what this means is that the Defendant railroad was under an obligation to provide Plaintiff with a reasonably safe place to work, proper equipment, and to use reasonable care to avoid doing injury. <u>Rediker v. Chicago, Rock Island & Pacific R. Co.</u>, 571 P2d 70, 1 Kan.App. 2d 581, cert.denied. 435 U.S. 982, 98 S.Ct. 1635, 56 L Ed.2d 76 (1977).

JURY INSTRUCTION NO. 8:

Under the FELA, the Defendant, AMTRAK had an affirmative non-delegable duty and must use reasonable care to furnish Joseph J. DiBenedetto with a safe place to work and provide him with adequate assistance and equipment to safely perform his job.

This duty cannot be passed on to any person, firm or corporation. <u>Bailey v. Central V.R. Inc.</u>, 319 U.S. 350, 87 L.Ed. 1444, 63 S.Ct. 1062 (1943) and <u>Ellis v. Union P.R. Co.</u>, 329 U.S. 649, 91 L.Ed. 572, 67 S.Ct. 598 (1947). This duty to provide a safe place to work is an affirmative one. This means that the Defendant, AMTRAK, had the positive obligation to provide Joseph J. DiBenedetto with a safe place to work and to find any defect or hazard which would normally be revealed. <u>Williams v. Atlantic Coastline Railroad Company</u>, 190 F.2d 744 (5th Cir. 1951). Accordingly, if you find under all the circumstances of this case that AMTRAK was unreasonable in not providing Joseph J. DiBenedetto with a safe place to work and that his injuries were caused, in whole or in part, by such failure, then you must find for Plaintiff, Joseph J. DiBenedetto, and against Defendant, AMTRAK.

JURY INSTRUCTION NO. 9:

       The test of a jury case, under the FELA, is simply whether the proofs justify with reason the conclusion that employer negligence played <u>any part,</u> <u>even the slightest,</u> in producing injury for which damages are sought. <u>Rogers v. Missouri P.R.Co.,</u> 352 U.S. 500, 1 L.Ed 2D 493, 77 S.Ct. 443 (1957).

JURY INSTRUCTION NO. 10:

The FELA is to be construed liberally to allow employees injured in the course of their employment to recover even where the negligence of the employer is minimal, <u>Rodriquez v. Deloroy Connecting Railroad,</u> 473 F.2d 819 (6th Cir. 1973) and the FELA must be construed liberally to fulfill the purpose for which it was enacted. <u>Batton v. Atlantic Coast Line Railroad Co.,</u> 211 NC 256, 193 SE 674, cert. denied. 303 U.S. 651, 58 S.Ct. 780, 82 L.Ed. 1112 (1937). The railroad has a duty and must provide trains, cars, equipment, tools, machinery and appliances and must supply them in a safe condition and maintain them and other property over which the Defendant has control in a reasonably safe and proper condition for their employee's use. <u>St. Louis S.R. Co. v. Green,</u> 552 S.W. 2d 880 (6th Div., TX Civ. App. 1977).

JURY INSTRUCTION NO. 11:

If the Plaintiff's injury is caused or contributed to by the negligent act or omission of a fellow employee, acting in the course of his employment, then the Defendant employer will be responsible for the act of omission of the fellow employee. Sinkler v. Missouri Pacific R. Co., 356 U.S. 326, 2 L.Ed. 2d 799, 78 S.Ct. 758 (1958); Seaboldt v. Pennsylvania Railroad Company, 290 F. 2d 296 (3d Cir. 1961).

The negligence of a supervisor or foreman or co-worker is imputed to the railroad under the FELA. Thus, if you find any other AMTRAK employee responsible in any way for Joseph J. DiBenedetto's injuries, then you must find AMTRAK negligent.

JURY INSTRUCTION NO. 12:

Under the Federal Employers' Liability Act, the Defendant has a non-delegable duty to provide the Plaintiff with a safe place to work; the duty on the part of the Defendant includes inspection of third party property for hazards and taking precautions to protect the Plaintiff from defects.    This duty extends beyond Defendant's premises and extends to equipment which a third party may have primary obligation to maintain. The Defendant has this duty to provide the Plaintiff with a safe place to work, with safe equipment and machinery; this is a non-delegable duty and failure to comply with this duty constitutes negligence. <u>Nivens v. St. Louis S.R. Co.</u>, 425 F.2d 114, (5th Cir. 1970) cert. denied. 440 U.S. 879, 27 L.Ed. 2d 116, 91 S.Ct. 121; <u>Duncan v. St. Louis S.F.R. Co.</u>, 480 F.2d 79, (8th Cir. 1973) cert. denied. 414 U.S. 859, 38 L.Ed. 2d 109, 94 S.Ct. 69; <u>Pyzynski v. Pennsylvania Cent. Transp. Co.</u>, 438 F. Supp. 1044 (WD NY 1977).

JURY INSTRUCTION NO. 13:

An employer must make proper tests and inspections to discover dangers in the places where employees must work and after ascertaining their existence must take reasonable precautions for the safety of the employees. Williams v. ACL, 190 F.2d 744, 748 (5th Cir. 1951). The employee has the right to rely on the performance of this duty by the employer and govern his acts accordingly and even if precautions are taken for an employee's safety, the employer cannot escape liability if further precautions are possible and reasonable and were not taken. Boston and M.R.R. v. Meech, (1st Cir., 1946), 156 F.2d 109, cert. denied. 329 U.S. 763, 67 S.Ct. 124, 91 L.Ed. 658.

JURY INSTRUCTION NO. 14:

In this case, you must determine based upon the evidence whether AMTRAK was negligent in failing to provide Joseph J. DiBenedetto with a safe place to work. In evaluating whether AMTRAK was negligent you should consider whether any employees of AMTRAK knew or should have known of the risk factors associated with carpal tunnel syndrome before Joseph J. DiBenedetto was diagnosed with carpal tunnel syndrome.

JURY INSTRUCTION NO. 15:

You are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited to the statements of the witnesses. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts, which you find have been proved, such reasonable inferences as seem justified in the light of your experience.

Inferences are deductions or conclusions which reason and common sense lead the jury to draw from facts which have been established by the evidence in the case.

Schultz v. Pennsylvania R. Co., 350 U.S. 523, 100 L.Ed. 668, 76 S.Ct. 608 (1956).

JURY INSTRUCTION NO. 16:

You may not diminish the Plaintiff's recovery in any respect in the belief that his injuries resulted from the fact that he was present at a job and in a vicinity where danger existed and injury could occur. In the law, such conscious awareness of danger is called "assumption of the risk". The Supreme Court of the United States has ruled that the defense of assumption of the risk is not available as a defense in suits brought by railroad employees under "The Federal Employers' Liability Act". <u>Blair v. Baltimore & O.R. Co.</u>, 323 U.S. 600, 89 L.Ed. 440, 65 S.Ct. 545 (1945); and <u>Tiller v. Atlantic C.L.R. Co.</u>, 318 U.S. 54, 87 L.Ed. 610, 63 S.Ct. 444, 143 A.L.R. 967 (1943). Accordingly, any subjective awareness of potential danger, perceived by Joseph J. DiBenedetto is irrelevant in this case.

JURY INSTRUCTION NO. 17:

In the event you are asked to consider the issue of contributory negligence, the Federal Employers' Liability Act specifically provides that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee". 45 U.S.C. Sec. 53. An employee may be more negligent than the railroad and still recover damages under the FELA.

JURY INSTRUCTION NO. 18:

You may not consider assumption of the risk as a defense. Thus, if you find a knowledgeable acceptance by the Plaintiff of a dangerous condition when such acceptance was necessary for the performance of his duties, you may not consider the fact as a defense in this case. Rivera v. Farrell Lines, Inc., 474 F.2d 255 (2d Cir. 1973).

You may consider whether contributory negligence is present in this case. Contributory negligence involves the notion of some fault on the part of the Plaintiff. It has been defined as the failure to use the care for one's safety as would an ordinarily prudent person in similar circumstances.

However, contributory negligence is not assumption of the risk. You must find some careless act or omission of the Plaintiff, over and above the knowledgeable acceptance of a dangerous condition before you may find contributory negligence. Rivera v. Farrell Lines, Inc., supra. Thus, if you find that there were two ways in which the Plaintiff could have performed his job, one safe and the other dangerous, and that the Plaintiff selected the dangerous way, then you may find contributory negligence. Louisville and N.R. Co. v. Marill, 211 Ala. 39 (1924); Illinois C.R. Co. v. Skinner's Admix, 177 KY 62 (1917); Southern Pacific Co. v. Lacruz, 228 S.W. 108 (Tex. Co. App. 1921).

JURY INSTRUCTION NO. 19:

After you consider liability and find liability against AMTRAK, you must determine that AMTRAK's negligence, in whole or in part, caused, contributed to, Joseph J. DiBenedetto's personal injuries.

JURY INSTRUCTION NO. 20:

In this case, you must determine based upon the evidence after you have found liability against AMTRAK what are Joseph J. DiBenedetto's damages as a result of the personal injuries sustained at work.

JURY INSTRUCTION NO. 21:

  The general proposition with respect to damages in our law is that damages are intended to compensate an injured party for the injury sustained, to put the injured party insofar as practicable in the same economic position that he or she would have been in if the accident had not occurred.  <u>Sleeman v. C & O Ry. Co.</u>, 290 F. Supp. 817 (DC MI 1968), aff'd in part, vacated in part on other grounds, 414 F.2d 305, on remand 305 F. Supp. 33.

JURY INSTRUCTION NO. 22:

If you find for the Plaintiff, your verdict for the Plaintiff should be returned in a lump sum and should include the following:

(a)     Adequate compensation for Plaintiff's pain, suffering, discomfort, anxieties, fears, depressions, inconveniences and all other adverse effects resulting from his injuries and disability past, present and future. Schirra v. Delaware L & W R. Co., 103 F. Supp. 812 (EDPA 1952); Mileski v. Long Island R.R. Co., 499 F.2d 1169 (2d Cir. 1974).

(b)     A sum of money sufficient to compensate the Plaintiff for lost wages and loss of earning capacity which the Plaintiff has suffered from the time of the incident through the time he fully recovered. Baker v. B & O R. Co., 502 F.2d 638 (6th Cir. 1974).

(c)     A sum of money sufficient to compensate Plaintiff for any impairment of his capacity to earn a living in the future, i.e., damages for impairment of Plaintiff's future earning capacity. Moore v. C & O Railway Co., (DC WV 1980) aff'd 649 F.2d 1004.

JURY INSTRUCTION NO. 23:

If you conclude that the Plaintiff as a result of his injuries has been rendered less able to work than he was before, then one of the elements which you include in your damages award would be his out-of-pocket wages. <u>Trawbridge v. Chicago & I.M. Ry. Co.</u>, 263 N.E. 2d 619 (Il. App. 1970).

JURY INSTRUCTION NO. 24:

The Defendant must take the Plaintiff as it finds him and therefore, if you find by reason of some pre-existing condition that the Plaintiff was more susceptible to injury, you may not thereby exonerate the Defendant from liability.  Nelson v. Black, 266 P.2d 817 (1954).  The Defendant is liable for all damages resulting from the aggravation or acceleration of the Plaintiff's pre-existing condition if you find that the Defendant's negligence or breach of duty played some part, even the slightest, in producing the injury which caused the Plaintiff to become disabled.  Milos v. Sea-Land Services, Inc., 478 F. Supp. 1014 (SDNY 1979) at 1023.

JURY INSTRUCTION NO. 25:

Therefore, Plaintiff, Joseph J. DiBenedetto, can recover for the aggravation of his injuries if the inaction or negligence of the Defendant, directly or remotely, contributed thereto. Heater v. Chesapeake & Ohio Railway Co., 497 F. 2d 1243, 1246 (7th Cir. 1974). You should consider AMTRAK's conduct through its employees after 1996 to determine if AMTRAK's negligence aggravated or worsened Joseph J. DiBenedetto's injuries.

JURY INSTRUCTION NO. 26:

The Jury is instructed that a permanent injury is not one which eventually causes a person's death; it is disablement which accompanies him or her to the grave.   Carminati v. Philadelphia Transportation Co., 405 PA 500 (1962).

JURY INSTRUCTION NO. 27:

In any verdict for the Plaintiff you include that sum of money as would fairly compensate him for the pain, suffering, and inconvenience which he has sustained as a result of his injuries and you should consider Joseph J. DiBenedetto's pain and suffering following his injuries in 2001, past, present, and future.

Plaintiff is entitled to that sum of money which in the collective good judgment of the Jury would represent fair compensation for any pain, suffering, aggravation, inconvenience, disruption of his lifestyle and so forth which is attributable to the injuries for which the Defendant is liable. Mileski v. Long Island R.R. Co., 449 F.2d 1169 (2d. Cir. 1974).

JURY INSTRUCTION NO. 28:

In assessing damages, the law allows you to award to Plaintiff a sum that will reasonably compensate him for any physical pain as a result of the Defendant's wrongdoing. There are no objective guidelines by which you can measure the equivalent of this element of injury; the only real measuring stick, if it can be so described, if your collective conscience. You should consider all the evidence bearing on the nature of the injuries and the likely duration thereof. In this difficult task of putting a money figure on the aspect of injury that does not readily lend itself to an evaluation in terms of money, you should try to be an objective as the situation will permit. Moreover, the fact that the injured person was able to work, this in of itself does not preclude or prevent you from awarding damages for pain and suffering experienced while working during his disability. Greenburg v. McCabe, 453 F.Supp. 765 (EDPA, 1978), aff'd 594 F.2d 854 (3d Cir. 1979).

You should consider Joseph J. DiBenedetto's pain and suffering, inconvenience and loss of enjoyment of life, past, present and future when assessing compensation for non-economic damages.

JURY INSTRUCTION NO. 29:

The Jury is instructed that the money award to the Plaintiff shall be in today's dollars. Therefore, the jury should consider the value of the dollar today, what it will buy now and its worth at the present time rather than its value at some time in the past. <u>Sprangler v. Helms N.Y. Pitts Motor Express</u>, 396 PA 482, 488.

JURY INSTRUCTION NO. 30:

Under the FELA, liability for negligence attaches if the railroad knew, or by the exercise of due care should have known, of the danger or risk to its employee. The railroad's duty is not limited to anticipating dangers of which it knows, but the railroad must also anticipate dangers which reasonably it should have known. Chicago & N.W.R. Co. v. Rieger, 326 F.2d 329 (8th Cir. 1964); cert.denied. 377 U.S. 917; Patterson v. Norfolk & W.R. Co., 489 F.2d 303 (6th Cir. 1973).

JURY INSTRUCTION NO. 31:

       The FELA provides recovery for injuries in the nature of occupational diseases including hearing loss, asbestosis and carpal tunnel syndrome suffered by employees by reason of the railroad's negligence in requiring that employee to work under conditions likely to bring about harmful consequences.  The mere difference in time required for different acts of negligence to take effect and disclose their consequences does not justify excluding occupational injuries and diseases from the coverage of the FELA.  Urie v. Thompson, 337 U.S. 163 (1949). The FELA does not concern itself solely with injuries done by violent, external, accidental force occurring with suddenness generally unexpected by the recipient, but also allows recovery for occupational diseases.  Atchison, Topeka & Santa Fe Railway Co. v. Preston, 257 F.2d 933 (10th Cir. 1958).

JURY INSTRUCTION NO. 32:

The Defendant must take the Plaintiff as it finds him and therefore, if by reason of some preexisting condition the Plaintiff is more susceptible to occupational injuries, the Defendant cannot be exonerated from liability.  Nelson v. Black, 266 P.2d 817 (1954).  The Defendant is liable for all damages resulting from an aggravation or acceleration of a possible preexisting condition that the Plaintiff may have as log as it is found that the railroad's breach of duty played some part, even the slightest, in accelerating or aggravating the Plaintiff's injury. Milos v. Sea-Land Services, Inc., 478 F.Supp. 1014 (SDNY 1979) at 1073.

JURY INSTRUCTION NO. 33:

If the Plaintiff's right wrist injury was caused or contributed to, in whole or in part, by the negligent acts or omissions of a fellow employee, foreman or supervisor of the railroad, acting in the course of their employment, then the railroad is responsible for the negligent actions or omissions of the fellow employee, foreman or supervisor. <u>Sinkler v. Missouri Pacific Railway Co.</u>, 356 U.S. 326 (1958); <u>Seaboldt v. Pennsylvania Railroad Co.</u>, 290 F.2d 296 (3rd Cir. 1961). The negligence of a supervisor or foreman or other employee is imputed to the railroad under the FELA.

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH J. DIBENEDETTO,
     Plaintiff,

vs.

NATIONAL RAILROAD PASSENGER
CORPORATION,
     Defendants.

CIVIL ACTION NO.:  04-10570-RCL

## DEFENDANT'S MOTION PURSUANT TO FED. R. CIV. P. 51(b)

Pursuant to Rule 51(b) of the Federal Rules of Civil Procedure, the defendant, National

Railroad Passenger Corporation ("AMTRAK"), moves that the jury in the above-captioned case

be instructed in accordance with the attached requested jury instructions.  The defendant reserves

its right to file supplemental or amended jury instruction requests in response to evidence and/or

issues which may arise during the course of the trial and before the Court instructs the jury.

Respectfully submitted,
The defendant,
National Railroad Passenger Corporation,
By its attorneys,

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served a copy of the foregoing
pleading on all parties by hand/mail/delivering same, to
all counsel of record.
Signed under the pains and penalties of perjury.

**DATED** _____12/30/05_____

Michael B. Flynn, BBO #559023
John E. Young, BBO #654093
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive
Suite 200
Quincy, MA 02169
(617) 773-5500
(617) 773-5510 (facsimile)

DATED:  <u>December 30, 2005</u>

# TABLE OF CONTENTS

I.    **Preliminary Instructions**                                          Request No.:

      Parties Should be Treated as Equals                                      1
      Sympathy, Emotion Irrelevant                                            2
      Credibility of Witnesses, Generally                                      3
      Affect of Witness' Inconsistent Statements                              4

II.   **Liability – The Plaintiff's FELA Negligence Claim**

      Burden of Proof—FELA Negligence                                         5
      Elements of FELA Negligence Liability                                    6
      FELA Negligence—Duty to Act Reasonably                                   7
      FELA Negligence—Standard of Care                                        8
      Mere Occurrence of an Injury Does Not Establish Liability                9
      Defect Must be Due to Negligence                                        10
      Test of Liability for Defective Tools—FELA                              11

III.  **Causation**

      Causation, Generally                                                    12
      Proximate Cause is Required Under the FELA                              13
      Causation Under FELA                                                    14
      Burden to Prove Medical Causation                                       15
      Expert Testimony Required                                               16
      Causation—Probability, Not Possibility Standard                         17

IV.   **Plaintiff's Negligence**

      Plaintiff's Duty to Use Due Care                                        18
      Affect of Plaintiff's Negligence—Sole Cause                             19
      Violation of a Safety Rule or Practice—Evidence of Negligence           20
      Affect of Plaintiff's Negligence—Reduction of Recovery                  21
      Affect of Plaintiff's Negligence                                        22

V.    **Damages**

      Damages – No Inference from Instructions                                23
      Speculation Impermissible                                               24
      No Recovery for Pre-existing Conditions                                 25
      Aggravation of Injuries—Future Disability                               26
      Apportionment of Damages                                                27
      Apportionment--Percentages                                             28
      Plaintiff is Not Entitled to Recover Medical Expenses                   29

Duty of Plaintiff to Mitigate Damages                          30
Duty of Plaintiff to Mitigate Damages                          31
Malingering—Receipt of Disability Benefits                     32
Damages Must Be Reasonable                                     33
Wage Loss                                                      34
Hedonic or Loss of Pleasure of Life Damages                    35

DEFENDANT'S JURY REQUEST NO. 1

(Parties Should Be Treated As Equals)

This case should be considered and decided by you as an action between parties of equal standing in the community, of equal worth, and holding the same or similar stations in life. A business or a company is entitled to the same fair trial at your hands as is a private individual. The defendant AMTRAK should be given the same fair and equal treatment as you would give to any individual. All persons, including businesses and other corporations, stand equal before the law, and are to be dealt with as equals in a court of justice.

See London v. Bay State Street Railway, 231 Mass. 480, 485-486 (1919); 2 Devitt and Blackmar, Federal Jury Practices and Instructions, §71.05 at 587 (3d ed. 1977).

DEFENDANT'S JURY REQUEST NO. 2

(Sympathy, Emotion Irrelevant)

Sympathy and emotion should play no part in your deliberations. You may not decide this case on the basis of the fact that you may feel sorry for the plaintiff or that you feel badly because he may have suffered an injury or illness. Rather, your deliberations should be well-reasoned, impartial, and unemotional. You must decide this case by applying the principles of law, which the Court defines for you, to the facts of this particular case, as you objectively find them to be.

See London v. Bay State Street Railway, 231 Mass. 480, 485-486 (1919); 2 Devitt and Blackmar, Federal Jury Practice and Instructions §71.02 at 586 (3d ed. 1977).

DEFENDANT'S JURY REQUEST NO. 3

(Credibility of Witnesses, Generally)

You should give the testimony of each witness as much weight as in your judgment it is fairly entitled to receive.  Jurors are the sole judges of the credibility of the witnesses, and if there is any conflict in their testimony, it is your function to resolve the conflict and to determine the truth.

In determining the credibility of a witness, and determining whether the witness is to be believed as to his or her testimony, you should consider the conduct and demeanor of the witness while testifying, the frankness or lack of frankness while testifying, the reasonableness or unreasonableness of the testimony, the probability or improbability of the testimony, the accuracy of the witness' recollection, and the degree of intelligence shown by the witness.

You should take into consideration the character and appearance of the witness at trial in determining the credit to be given to his or her testimony.

See Ford v. Kremer, 360 Mass. 870, 277 N.E.2d 679 (1972) (rescript); Harding v. Studley, 294 Mass. 193, 196, 200 N.E. 916 (1936); Hughes, Evidence §237 at 272-273 (1961).

DEFENDANT'S JURY REQUEST NO. 4

(Affect of Witness' Inconsistent Statements)

A witness may be impeached by contradictory evidence, or by evidence that at some time the witness has said or done something, or has failed to say or do something, which is inconsistent with that witness' present testimony.

If you believe that any witness has made inconsistent statements, it is your exclusive role to give the testimony of that witness such credibility, if any, as you think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust that witness' testimony in other matters and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

2 Devitt and Blackmar, Federal Jury Practice and Instructions §73.05 at 620 (3d ed. 1977).

DEFENDANT'S JURY REQUEST NO. 5

(Burden of Proof—FELA Negligence)

On his FELA negligence claim, the plaintiff must prove by a preponderance of the

evidence that AMTRAK's negligence, if any, caused the plaintiff's alleged injuries. The

obligation of a railroad to its employees under the law is to exercise ordinary care, not absolute

care, under all of the facts and circumstances.

*See* Robert v. Consolidated Rail Corp., 832 F.2d 3, 6 (1st Cir. 1987); Ellis v. Union Pac.
R.R., 329 U.S. 649, 653 (1947); Atlantic Coast Line R.R. v. Dixon, 189 F.2d 525, 527    (1951),
cert. denied, 342 U.S. 830 (1951); Raudenbush v. Baltimore and Ohio Railroad, 160 F.2d 363
(3rd Cir. 1947).

DEFENDANT'S JURY REQUEST NO. 6

(Elements of FELA Negligence Liability)

The law "does not impose strict liability on [a railroad like AMTRAK]. Plaintiffs are

required to prove the traditional common law elements of negligence: duty, breach,

foreseeability, and causation."

Robert v. Consolidated Rail Corp., 832 F.2d 3, 6 (1st Cir. 1987). See also New York, New Haven & Hartford Railroad Co. v. Dox, 249 F.2d 572, 573 (1st Cir. 1959).

DEFENDANT'S JURY REQUEST NO. 7

(FELA Negligence—Duty to Act Reasonably)

AMTRAK should not be regarded as an insurer or guarantor of the safety of their

employees, nor of the safety of the places in which they work. Rather, AMTRAK's duty is

merely one of acting reasonably.

Wilkerson v. McCarthy, 336 U.S. 53, 61, 69 S. Ct. 413 (1949); Conway v. Consolidated
Rail Corp., 720 F.2d, 221, 223 (1st Cir. 1983) (the FELA, "unlike workmen's compensation ...
does not make the employer an insurer"); Kaminski v. Chicago River & Indiana R. Co.,, 200
F.2d, 3 (7th Cir. 1953) (railroad is "not an insurer of plaintiff's safety").

AMTRAK is not required to provide a perfect or absolutely safe workplace. Rather,

AMTRAK must only provide a reasonably safe place to work and reasonably safe equipment.

Shenker v. Baltimore & Ohio R.R. Co., 374 U.S. 1, 7, 83 S. Ct. 1667, 1671 (1963);
Peyton v. St. Louis Southwestern Ry. Co., 962 F.2d 832, 833 (8th Cir. 1992). AMTRAK is not
obligated to eliminate all risks in the workplace; it is only obligated to eliminate unreasonable
risks." Tobin v. National Railroad Passenger Corp., 677 F.Supp. 674, 675 (D. Mass. 1988)
(emphasis added).

If you find that AMTRAK provided a reasonably safe place to work at the time the

plaintiff was allegedly injured, then you must return a verdict in favor of AMTRAK.

Ellis v. Union Pac. R.R., 329 U.S. 649, 653 (1946), Reese v. Phila. & Reading Ry., 239
U.S. 463, 465 (1915).

DEFENDANT'S JURY REQUEST NO. 8

(FELA Negligence—Standard of Care)

The standard of care applied under the FELA is that of a person exercising ordinary care under the same or similar circumstances. Mere proof of injury or a dangerous workplace is not proof of a railroad employer's negligence.

Tiller v. Atlantic Coastline R. Co., 318 U.S. 54 (1943); Eaton v. L.I. R.R., 398 F.2d 738, 741 (2nd Cir. 1968).

DEFENDANT'S JURY REQUEST NO. 9

(Mere Occurrence of an Injury Does Not Establish Liability)

The mere fact that an injury may have occurred and that certain parties are now here in

Court should create no inference, and provide no evidence, that they were caused by any

negligence or fault on the part of AMTRAK.

2 Devitt & Blackmar, Federal Jury Practice and Instructions, §80.07 (3d ed. 1977); Wardwell v. George H. Taylor Co., 333 Mass. 302, 305, 130 N.E.2d 586 (1955) (mere fact that accident happened is not evidence of negligence); Borysewicz v. Dineen, 302 Mass. 461, 19 N.E.2d 540 (1939); Tallon v. Spellman, 302 Mass. 179, 19 N.E.2d 33 (1939).

DEFENDANT'S JURY REQUEST NO. 10

(Defect Must be Due to Negligence)

AMTRAK may be liable for a defect in its tools and equipment only if the defect is due to its negligence. If there is an injury as the result of some defect, but if that defect was not due to the negligence of the defendant, then the defendant cannot be held responsible.

Seaboard Airline Ry. v. Horton, 233 U.S. 492, 501 (1914); Wilkerson v. McCarthy, 336 U.S. 53 (1949).

## DEFENDANT'S JURY REQUEST NO. 11

(Test of Liability for Defective Tools - FELA)

Under the FELA , defendant-railroads such as AMTRAK  "[are] not liable for failing to provide a safe workplace if they have no reasonable way of knowing that the potential hazard exists."

Beeber v. Norfolk Southern Corp., 754 F. Supp. 1364, 1368 (N.D. Ind. 1990); see also Peyton v. St. Louis Southwestern Railway Company, 962 F.2d 832 (8th Cir. 1992)(judgment notwithstanding the verdict properly entered in FELA action where defendant-railroad "had no reasonable way of knowing about the hazard that caused the employee's injury"); O'Hara v. Long Island R. Co., 665 F.2d 8, 9 (2nd Cir. 1981) (plaintiff-trainman failed to prove unsafe workplace under FELA, as matter of law, where "he furnished no evidence that the Railroad had notice of defect in the tiles" which loosened and thereby caused plaintiff to fall); Perry v. Morgan Guaranty Trust Co. of New York, 528 F.2d 1378, 1379 (5th Cir. 1976) (decided under comparable Jones Act standards and reversing judgment which had been erroneously entered in favor of plaintiff, because "there is absolutely no evidence to show how the grease [on stairs] got there, how long it had been there, or that there had been time enough for the shipowner, in the exercise of due care, to have learned of it and corrected the situation"); Kaminski v. Chicago River & Indiana R. Co., 200 F.2d 1 (7th Cir. 1952)("[b]efore defendant can be charged with negligence in failing to remedy the condition which caused plaintiff's injury, or failed to warn plaintiff of the existence of such a condition, it is necessary to establish that the defendant had actual knowledge of the condition, or, in the exercise of ordinary care, should have known of its existence"); Turner v. Clinchfield Railroad Co., 489 S.W.2d 257 (Tenn. App. 1972) (presence of ice on locomotive steps not actionable in absence of evidence where ice came from or how long it had existed).

In defective tool cases, such as this case, an FELA plaintiff such as Mr. DiBenedetto:

"must show by direct or circumstantial evidence that (1) an officer, employee or agent of the railroad was responsible, through negligence, for the presence of the unsafe condition; or (2) at least one of such persons had actual knowledge of its presence before the accident; or (3) the unsafe condition had continued for a sufficient length of time to justify the inference that failure to know about it and remove it was due to want of proper care."

Brown v. Cedar Rapids and Iowa City Ry. Co., 650 F.2d 159, 161 (8th Cir. 1981).  See also Miller v. Cincinnati, New Orleans & Texas Pacific Ry. Co., 203 F. Supp. 107, 111 (E.D. Tenn. 1962) ("[L]ogic impels one to conclude that so long as liability is predicated upon negligence, as it is under the FELA, no defendant should be held liable for defective equipment of which he neither does nor, in the exercise of reasonable care, should have knowledge").

DEFENDANT'S JURY REQUEST NO. 11 (continued)

Thus, in order to find the defendants AMTRAK liable under the FELA in the circumstances involved, the plaintiff must prove that AMTRAK was negligent either because it: (a) actually caused an unsafe condition by providing defective tools; (b) had actual knowledge that the tools were defective; or (c) should have known the tools were defective because, in the exercise of reasonable care, sufficient time had existed for AMTRAK to have discovered the defective tools and to have repaired or replaced the tools. If you do not find one of these factors existed, then you must return a verdict for AMTRAK.

DEFENDANT'S JURY REQUEST NO. 12

(Causation, Generally)

The burden is on the plaintiff to prove by a preponderance of the evidence that the

injuries from which he complains were proximately caused by his employment with AMTRAK.

The plaintiff bears this burden on every element of each of his theory of liability.  You are not

permitted to speculate regarding the plaintiff's injuries.  Thus, if the plaintiff fails to prove that

his injuries resulted from employment with AMTRAK, he is not entitled to recover damages in

this action.

Kuberski v. New York Cent. R. R., 359 F.2d 90 (1966); Dollens v. Public Belt R. R. Commission, 333 F. Supp. 72 (1971); Rose v. Atlantic Coast Line R. R., 277 F. Supp. 913, aff'd, 403 F.2d 204; see also Robert v. Consolidated Rail Corp., 832 F.2d at 5-6 (to be recoverable under FELA, injury must be "result of the negligence of [railroads'] employers or their fellow employees"); Chesapeake & Ohio Ry. v. Carnahan, 241 U.S. 241, 244 (1916) (plaintiff must prove that employer's negligence was actual and proximate cause of his injuries); Buell v. Atchison, Topeka & Santa Fe Ry., 771 F.2d 1320, 1322 (9th Cir.), aff'd and vacated on other grounds, 480 U.S. 557 (1987).

DEFENDANT'S JURY REQUEST NO. 13

(Proximate Cause is Required Under the FELA)

If you find that AMTRAK was negligent under the FELA, you must next determine whether AMTRAK's negligence caused Mr. DiBenedetto's injuries in whole or in part. You need not find that AMTRAK's negligence was the sole cause, but you must find that it was a proximate cause of Mr. DiBenedetto's injury. In order to find that it was a proximate cause, you must find that the injury was the natural and probable consequence of AMTRAK's negligence, and that AMTRAK's negligence was a substantial factor in bringing about the injury.

You may not find that AMTRAK's negligence was a proximate cause if it merely created an incidental condition or situation in which an accident, otherwise caused, resulted in the Mr. DiBenedetto's injury.

Davis v. Wolfe, 263 U.S. 239, 243 (1923); Brady v. Southern Ry., 320 U.S. 476, 483 (1943); Gallick v. Baltimore & Ohio R.R., 372 U.S. 108, 120, n.8 (1963).

DEFENDANT'S JURY REQUEST NO. 14

(Causation under the FELA)

A FELA plaintiff has "the burden to show that his employer's negligence was a cause of his injury, and that this injury was sustained in the course of his employment for the railroad. . ." Specifically, the FELA plaintiff bears the burden of presenting evidence from which a jury could conclude a "probable" or "likely" causal relationship as opposed to a merely "possible" one. Thus, if the plaintiff fails to meet his burden, he is not entitled to recover damages in this action.

Green v. River Terminal Ry. Co. 763 F.2d 805, 808 (6th Cir. 1985); Ellis v. Union Pac. R.R., 329 U.S. 649 (1947); Edmonds v. Illinois Central Gulf Railroad Co., 910 F. 2d 1284, 1288 (5th Cir. 1990); *see also* Dukes v. Illinois Central Railroad, 934 F. Supp. 939, 944 (N.D. Ill. 1996); Mayhew v. Bell Steamship Co., 917 F.2d 961, 963 (6th Cir. 1990); Moore v. Chesapeake and Ohio Ry. Co., 340 U.S. 573, 578, 71 S. Ct. 428 (1951).

DEFENDANT'S JURY REQUEST NO. 15

(Burden to Prove Medical Causation)

The plaintiff must prove by a preponderance of the evidence that his arthritis was proximately caused by AMTRAK's negligence. AMTRAK is not to be held responsible for any ailments from which the plaintiff may suffer which resulted from any cause other than those related to the alleged accident.

You cannot hold AMTRAK responsible for any physical disability or illness which you find to be attributable to either a prior or subsequent illness or accident and/or which is otherwise not a direct result of the plaintiff's employment with AMTRAK. You may not speculate or guess about this issue. It is not sufficient for the plaintiff to show that his condition, injury and disability could or might have been caused by his employment with AMTRAK.

Chesapeake v. Ohio Ry. v. Carnahan, 241 U.S. 241, 244 (1916); Bowles v. Zimmer Mfg. Co., 277 F.2d 868 (7th Cir. 1960). See Moody v. Maine Cent. R. Co., 823 F.2d 693, 695 (1st Cir. 1987) ("Where the conclusion [of medical causation] is not one within common knowledge, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn") (citation omitted); Williams v. Southern Pacific Transp. Co., 813 F. Supp. 1227, 1229-1231 (S.D. Miss. 1992) (railroad not liable under FELA to engineer for alleged hearing loss in absence of expert medical evidence showing causal connection).

DEFENDANT'S JURY REQUEST NO. 16

(Expert Testimony Required)

Issues of causation, for example, (1) whether the plaintiff's arthritis was causally related

to his workplace activities; (2) whether the plaintiff's tools were defective; (3) whether the

plaintiff's tools caused him to develop arthritis, all represent subjects requiring specialized

medical knowledge and expertise. Jurors may not speculate or guess about these or any other

causation issues based upon their own common, lay understanding, but rather must rely on the

scientific or medical evidence provided by professionals and experts. You cannot draw an

inference of causation in the absence of the requisite expert testimony.

Claar v. Burlington Northern Railroad Co., 29 F.3d 499, 503 (9th Cir. 1994) ("where
special expertise is necessary to draw a causal inference, expert testimony is necessary");
Schmaltz v. Norfolk & Western Ry., 896 F. Supp. 180 (N.D.Ill. 1995); Moody v. Maine Central
R. Co., 823 F.2d 693, 695 (1st Cir. 1987); Maylew v. Bell S.S. Co., 917 F.2d 961, 963 (6th Cir
1990); Williams v. Southern Pacific Transp. Co., 813 F.Supp. 1227, 1229-1231 (S.D. Miss.
1992); Haggerty v. McCarthy, 344 Mass. 136, 140-141, 181 N.E.2d 562 (1962); 4 F. Harper, F.
James, O. Gray, The Law of Torts, 269 ." ("[W]hen the conclusion [of causation] is not one
within the common knowledge, expert testimony may provide a sufficient basis for it, but in the
absence of such testimony it may not be drawn.") .

DEFENDANT'S JURY REQUEST NO. 17

(Causation - Probability, Not Possibility Standard)

Medical opinions on the subject of causation are not relevant or of any value unless a

physician testifies that a causal relationship between a particular alleged event and a particular

injury is probable and reasonably likely, rather than a mere possibility.


See <u>Imbibo v. Ahrens,</u> 360 Mass. 847, 847-848, 274 N.E.2d 349 (1971); <u>Oberlander's</u>
<u>Case</u>, 348 Mass. 1, 7, 200 N.E.2d 268 (1964); <u>Berardi v. Mendicks,</u> 340 Mass. 396, 402, 164
N.E.2d 544 (1960).  See also <u>Mayhew v. Bell S. S. Co.,</u> 917 F.2d 961, 963 (6th Cir. 1990).

DEFENDANT'S JURY REQUEST NO. 18

(Plaintiff's Duty to Use Due Care)

Under the law, all persons are bound to take ordinary and reasonable care for their own

safety and are required to use that degree of care and prudence which people of ordinary

intelligence and prudence would exercise under the same or similar circumstances. A person

must make a reasonable use of his or her own faculties and use due care to observe and to avoid

dangers or hazards which may allegedly exist upon the equipment he or she is using.

Benjamin v. O'Connell & Lee Manufacturing Company, 334 Mass. 646, 649, 138 N.E.2d 126 (1956); Lookner v. New York, New Haven & Hartford Railroad, 333 Mass. 555, 557, 132 N.E.2d 160 (1956); Nolan and Sartorio, Tort Law §208 at 346-347 (2d ed. 1989). See Allen v. Chance Mfg. Co., Inc., 873 F.2d 465, 473 (1st Cir. 1989). See also Hlodan v. Ohio Barge Line, Inc., 611 F.2d 71 (5th Cir. 1980) (breach of duty which plaintiff has consciously assumed as term of employment will bar recovery for injuries resulting from breach); Beimert v. Burlington Northern, Inc, 726 F.2d 412 (8th Cir. 1984) (no recovery where employee's negligence was sole cause of accident), Higley v. Missouri Pacific R. Co., 685 S.W.2d 572 (Mo. App. 1985).

DEFENDANT'S JURY REQUEST NO. 19

(Affect of Plaintiff's Negligence—Sole Cause)

The defendant bears the burden of proving that the plaintiff was negligent. If you find

that the plaintiff was negligent, and that his negligence proximately caused his injuries, then you

must assign a percentage of fault to him. If the plaintiff himself was negligent and such

negligence was the sole cause of his alleged injuries, then you must find for the defendant

AMTRAK. With respect to his FELA negligence claim, the plaintiff's recovery will be reduced

by his percentage negligence.

Carter v. Atlanta & St. A. B. Ry., 338 U.S. 430, 435 (1949). See Hlodan v. Ohio Barge Line, Inc., 611 F.2d 71 (5th Cir. 1980) (breach of duty which plaintiff has consciously assumed as term of employment will bar recovery for injuries resulting from breach); Beimert v. Burlington Northern, Inc, 726 F.2d 412 (8th Cir. 1984) (no recovery where employee's negligence was sole cause of accident), Higley v. Missouri Pacific R. Co., 685 S.W.2d 572 (Mo. App. 1985).

DEFENDANT'S JURY REQUEST NO. 20

(Violation of a Safety Rule or Practice—Evidence of Negligence)

You may consider the plaintiff's violation of AMTRAK's *Safety Rules*, *Transportation Rules* or standard practices as evidence of the plaintiff's own negligence.

Godrey v. Old Colony Street Railway, 223 Mass. 419, 420 (1916).

DEFENDANT'S JURY REQUEST NO. 21

(Affect of Plaintiff's Negligence—Reduction of Recovery)

If the plaintiff himself was negligent and such negligence was the sole cause of his

accident, then you must find for the defendant.

Carter v. Atlanta & St. A. B. Ry., 338 U.S. 430, 435 (1949).  See Hlodan v. Ohio Barge Line, Inc., 611 F.2d 71 (5th Cir. 1980) (breach of duty which plaintiff has consciously assumed as term of employment will bar recovery for injuries resulting from breach); Beimert v. Burlington Northern, Inc, 726 F.2d 412 (8th Cir. 1984) (no recovery where employee's negligence was sole cause of accident), Higley v. Missouri Pacific R. Co., 685 S.W.2d 572 (Mo. App. 1985).  See also Restatement (Second) of Torts, supra at §§440-442; New York, New Haven & Hartford Railroad Co. v. Dox, 249 F.2d 572, 573 (1st Cir. 1957) ("[A] Federal Employers' Liability Act case is just like any other case of personal injuries alleged to be due to negligence, so far as concerns the issues of negligence and of proximate cause'").

DEFENDANT'S JURY REQUEST NO. 22

(Affect of Plaintiff's Negligence)

If you find that the plaintiff and the defendants were both at fault in this case, then the

plaintiff's own negligence reduces his recovery.

Specifically, the plaintiff's own negligence will reduce his recovery in direct proportion

to that percentage which you assign to him as representing his total contributory negligence in

the circumstances.

See Beimert v. Burlington Northern, Inc., 726 F.2d 412 (8th Cir. 1984) (no recovery
where employee's negligence was sole cause of accident); Higley v. Missouri Pacific R. Co., 685
S.W.2d 572 (Mo. App. 1985).

DEFENDANT'S JURY REQUEST NO. 23

(Damages - No Inference from Instructions)

The fact that the Court is giving you instructions on the law of damages, standing by itself, is not relevant and should create no inference whether or not the jury should actually award damages in the individual circumstances of this case. If you decide to award damages in this case, the plaintiff is entitled to that sum of money which will reasonably reimburse him for the cost of the injuries he has suffered as a result of the defendant's negligence. In this regard, the plaintiff bears the burden of proving that each and every injury or incapacity which he alleges in this case was causally related to AMTRAK's conduct.

3 Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, §85.01 at 312 (4th ed. 1987).

DEFENDANT'S JURY REQUEST NO. 24

(Speculation Impermissible)

Any damages for which the plaintiff seeks recovery in this action must be proven and not left to guess work or speculation.  You are not permitted to award the plaintiff speculative damages, that is, compensation for a loss or harm which, although possible, is conjectural or not reasonably certain.

Rouse v. Chicago, Rock Island & Pacific R. Co., 474 F.2d 1180 (8th Cir. 1973); Goldstein v. Kelleher, 728 F.2d 32, 38 (1st Cir. 1984); Dillingham v. Hall, 365 S.E.2d 738 (Va. 1988); Devitt, Blackmar and Wolff, §85.14 at 338 (4th ed. 1987).

DEFENDANT'S JURY REQUEST NO. 25

(No Recovery For Pre-Existing Conditions)

If you find that the plaintiff had a pre-existing medical condition or injury prior to or unrelated to anything that occurred at his workplace, you should not consider any pecuniary loss caused by the pre-existing condition which would have resulted independently of the plaintiff's workplace activities. You should also not consider any medical or hospital expenses or loss of earning capacity incurred by reason of the pre-existing condition which would have occurred independently of the plaintiff's workplace activities. If AMTRAK's negligence aggravated the plaintiff's pre-existing health condition, the defendant is liable only for the additional increment caused by its negligence and not for the pain and impairment that the plaintiff would have suffered even if the accident had never occurred.

Stevens v. Bangor and Aroostook Railroad Company, 97 F.3d 594, 601-602 (1st Cir. 1996); Varhol v. National Railroad Passenger Corp., 909 F.2d 1557, 1564-1565 (7th Cir. 1990); Holladay v. Chicago, Burlington and Quincy Railroad Co., 255 F.Supp. 879, 886 (S.D. Iowa 1966); Akers v. Norfolk and Western Railway Co., 417 F.2d 632 (4th Cir. 1969).

DEFENDANT'S JURY REQUEST NO. 26

(Aggravation of Injuries—Future Disability)

The plaintiff has the burden of proving to a reasonable degree of certainty that any alleged future disability of which he complains is a result of an aggravation of injuries caused by AMTRAK's conduct, rather than the result of the natural development of a pre-existing condition. If you find AMTRAK was negligent, it is only liable for the damages which cause an aggravation of a pre-existing condition, but it is not liable for the pre-existing condition itself.

Stevens v. Bangor and Aroostook Railroad Company, 97 F.3d 594, 601-602 (1st Cir. 1996); Varhol v. National Railroad Passenger Corp., 909 F.2d 1557, 1564-1565 (7th Cir. 1990); Akers v. Norfolk and Western Railway Co., 417 F.2d 632 (4th Cir. 1969); Holladay v. Chicago, Burlington and Quincy Railroad Co., 255 F.Supp. 879, 886 (S.D. Iowa 1966).

DEFENDANT'S JURY REQUEST NO. 27

(Apportionment of Damages)

If you find that there was an aggravation of the plaintiffs pre-existing health condition,

you should determine what portion of the plaintiff's present condition resulted from the

aggravation and make allowance in your verdict only for the aggravation.

Stevens v. Bangor and Aroostook Railroad Company, 97 F.3d 594, 601-602 (1st Cir. 1996); Varhol v. National Railroad Passenger Corp., 909 F.2d 1557, 1564-1565 (7th Cir. 1990); Sauer v. Burlington Northern Company, 106 F.3d 1490, 1495 (10th Cir. 1996).

DEFENDANT'S JURY REQUEST NO. 28

(Apportionment--Percentages)

If plaintiff's injuries were due in part to a pre-existing condition and in part to an

aggravation of any pre-existing condition as a result of the plaintiff's work activities (if

you find the defendant is negligent and its negligence proximately caused the plaintiff's

arthritis), then the defendant can only be held responsible for that portion of the plaintiff's

arthritis which is the result of an aggravation or exacerbation of his preexisting conditions.  In

apportioning the injuries, you must determine the percentage of injury attributable to the pre-

existing condition and the percentage to the aggravation of the pre-existing condition.


Sauer v. Burlington Northern Railroad Co., 106 F.3d 1490, (10th Cir. 1997); Dale v. B&O
RR. Co., 552 A.2d 1037 (Pa. App. 1989); Steinhouser v. Hertz Corp., 421 F.2d 1169 (2nd Cir.
1970); Akers v. N&W RR. Co., 417 F.2d 632 (4th Cir. 1969)

DEFENDANT'S JURY REQUEST NO. 29

(Plaintiff is Not Entitled to Recover Medical Expenses)

The plaintiff is not entitled to recover damages for medical expenses covered by the

plaintiff's insurance policy, the premiums for which were paid by AMTRAK.

Rogers v. Chicago & Northwestern Transportation Co., 375 N.E.2d 952 (1978); Nelson
v. Pennsylvania Central Railroad Co., 415 F.Supp 225 (1976); Brice v. National Railroad
Passenger Corporation, 664 F.Supp. 20 (1987) (The plaintiff may not recover for medical
expenses paid pursuant to the plaintiff's insurance policy covered by the railroad, but may
introduce evidence concerning the amount of medical bills or expenses; defendant railroad may
thereafter introduce evidence regarding the expenses that have been paid).

DEFENDANT'S JURY REQUEST NO. 30

(Duty of Plaintiff to Mitigate Damages)

An injured party is under a legal obligation to mitigate his damages, that is, to minimize the economic loss resulting from his injury, by resuming gainful employment as soon as such can reasonably be done. If he does not resume employment even though he is physically able to do so, then the plaintiff may not recover damages for earnings lost after the date on which he was or reasonably could have been able to return to some form of gainful employment.

Young v. American Export Lines, 291 F. Supp. 447, 450 (S.D. N.Y. 1968); Holladay v. Chicago, B. & Q. R. R., 255 F. Supp. 879, 886-887 (S.D. Iowa 1966); Alexander v. Meija Kasom K. K., 195 F. Supp. 831, 835 (E.D. Ca. 1961), aff'd, 311 F.2d 385 (5th Cir. 1962).

DEFENDANT'S JURY REQUEST NO. 31

(Duty of Plaintiff to Mitigate Damages)

"One who is injured by the wrongdoing of another [should the jury find that any wrongdoing has, in fact, occurred in this case] owes to that other the duty to make every reasonable effort to repair the injury and lessen the damages.  If he does not, the cause of any injury which such effort would have prevented is to be found in the neglect of the person injured, and not in the original wrong."

Degener v. Gray Line, 331 Mass. 133, 134, 117 N.E.2d 641 (1954).

DEFENDANT'S JURY REQUEST NO. 32

(Malingering - receipt of disability benefits)

You may consider the plaintiff's receipt of disability benefits as evidence of his

malingering (i.e. feigning physical disability to avoid work and to continue receiving disability

payments) or his lack of motivation to return to work and on the issue of the plaintiff's

credibility. However, you are to consider such evidence only on these issues; any such evidence

or references to collateral sources of income are not to reduce any compensation the plaintiff

may receive here or to increase it, but only on the issue of his motivation to go back to work.

McGrath v. Consolidated Rail Corporation, 136 F.3d 838 (1st. Cir. 1998); see also Santa
Maria v. Metro-North Commuter R.R., 81 F.3d 265, 273 (2d. Cir. 1996) (holding collateral
source evidence admissible if plaintiff puts financial status at issue);  Moses v. Union Pac. R.R.,
64 F.3d 413, 416 (8th Cir. 1995)(allowing collateral source evidence where the plaintiff's case
itself has made the existence of such evidence of probative value); DeMedeiros v. Koehring Co.,
709 F.2d 734, 739-741 (1st Cir. 1983); Simmons v. Hoegh Lines, 784 F.2d1234, 1236 (5th Cir.
1986) (finding collateral source evidence admissible for limited purpose of proving another
matter if little likelihood of prejudice and no strong potential for improper use, and a careful
qualifying jury instruction is given); Corsetti v. Stone Co., 396 Mass. 1, 16-21, 483 N.E.2d 793
(1985) (collateral source evidence admissible where plaintiff has affirmatively pled poverty).

"Collateral" sources of income are only those which the plaintiff has received from

sources other than AMTRAK. For instance, wage continuation paid to the plaintiff is not a

collateral source.

DEFENDANT'S JURY REQUEST NO. 33

(Damages Must Be Reasonable)

If you find for the plaintiff, the damages which you award must be reasonable.  You may award only that amount of damages as will reasonably compensate the plaintiff for his injury.  In this regard, the plaintiff has the burden of proving, by the evidence in the case, that the damages which he alleges or claims were sustained as a direct result of the accident.

Nolan and Sartorio, Tort Law §240 at 405 (2d ed. 1989).

DEFENDANT'S JURY REQUEST NO. 34

(Wage Loss)

Net wage loss is the proper measure of damages. Only after tax, or "net" income, is the proper measure of damages.

Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523 (1983); Norfolk & Western Railway Co. v. Liepelt, 444 U.S. 490 (1980); Cazad v. Chesapeake & Ohio Railway Co., 404 N.E.2d 320 (Ill.App. 1980); Norfolk & Western Railway Co. v. Liepelt, 444 U.S. 490 (1980).

Not only must federal income tax be deducted from any future wage loss calculation, but social security tax or railroad retirement tax must also be deducted, along with any state income tax.

Pickel v. International Oilfield Divers, Inc., 791 F.2d 1237 (5th Cir. 1986); Matador v. Ingram Tank Ships, Inc., 732 F.2d 475 (5th Cir. 1985).

Plaintiff is required to deduct from his gross earnings not only taxes, but also the business costs and expenses he will not incur as a result of his alleged injuries. These costs and expenses include union dues, transportation expenses, and special work clothing or safety equipment.

Jones & Laughlin Steel Corp. v. Pfeifer, 732 F.2d 475 (5th Cir. 1985).

DEFENDANT'S JURY REQUEST NO. 35

(Hedonic or Loss of Pleasure of Life Damages)

You may not include in your award of damages in this case, if any, any compensation for the plaintiff's so-called "loss of pleasure of life" or any compensation for alleged injury to the plaintiff's ability to enjoy life. Such alleged damages may not be recovered under the applicable law.

See generally 15 A.L.R.3d 506, "Damages — Loss of Enjoyment of Life."

# EXHIBIT E

## PLAINTIFF'S VOIR DIRE QUESTIONS

1.  Have any of you ever heard of an FELA case before you came here today?

2.  Have any of you ever worked for National Railroad Passenger Corporation a/k/a "AMTRAK", a railroad or other public transportation carrier?

3.  Has any member of your family, or any of your friends, worked for AMTRAK, a railroad or other public transportation carrier?

4.  Have any of you ever been an officer or executive employee of a railroad company, or any other company?

5.  Have any of you ever had any connection whatever with AMTRAK, in any way?

6.  Is there anyone here who has ever been involved in any way in an FELA case, either as an interested party, a witness, or in any other capacity?

7.  Have any of you ever been either a Plaintiff or Defendant in any type of personal injury lawsuit or other lawsuit?

8.  Is there anyone who is against personal injury lawsuits or anyone who just feels that someone should not sue for damages because of personal injuries?

9.  Is there anyone who has any prejudice or bias against personal injury lawsuits, of any kind?

10. Is there anyone who has any feeling of prejudice or bias against lawyers who bring personal injury lawsuits?

11. Is there anyone who has already served as a juror in an FELA case?

12. How many of you have ever served as jurors in any type of personal injury case?

13. Do any of you presently know anyone who is an employee of AMTRAK or any railroad company or public transportation company?

14. Joseph J. DiBenedetto has sued AMTRAK for money for compensation for economic and non-economic damages. Is there anyone who would not return a verdict for an amount of compensation shown to be due the Plaintiff if the evidence proves it?

15. Is there anyone who would not be able to award Joseph J. DiBenedetto money as compensation for pain and suffering, inconvenience and loss of enjoyment of life?

16. Is there anyone who just feels that Joseph J. DiBenedetto should not sue for compensation for his personal injuries, and who simply could not return a verdict in money damages, regardless of what evidence shows?

17. Is there anyone who regularly rides AMTRAK trains and if so, how frequently?

18. Is there anyone who has had a wrist injury?

19. Is there anyone who has had wrist surgery?

20. Is there anyone who has had any type of surgery?

21. What do you know about repetitive stress injuries, also known as cumulative trauma disorders?

22. Are any of you concerned that a large jury verdict would affect or increase train fares or insurance rates?

23. Is there anything about this case which makes you feel that you should not serve as a juror, anything at all which may indicate to you that you could not be totally fair and impartial to both sides?

# EXHIBIT F

## DEFENDANT'S PROPOSED VOIR DIRE

1.    Have you, any members of your family or relatives ever had a claim and/or lawsuit against the National Railroad Passenger Corporation (better known as "AMTRAK") or any other railroad, including but not limited to, Consolidated Rail Corporation ("Conrail"), MBTA, Mass. Bay Commuter Rail, the Boston & Maine Railroad, Norfolk Southern Corporation, CSX Transportation, Inc. ("CSX") and/or Penn Central?

2.    Have you, any members of your family or relatives ever worked for or been employed by AMTRAK or any other railroad, including but not limited to, Conrail, MBTA, Mass. Bay Commuter Rail, the Boston & Maine Railroad, Norfolk Southern Corporation, CSX and/or Penn Central?

3.    Have you, any members of your family or relatives ever been a member of the United Transportation Workers' Union or any other union which is involved with the railroad industry?

4.    Have you, any members of your family or relatives ever worked for or been employed by the United Transportation Workers' Union or any other union which is involved with the railroad industry?

5.    Have you, any members of your family or relatives ever been a member of any other union?

6.    Have you, any members of your family or relatives ever worked for or been employed by any other union?

7.    If you answered "yes" to any of questions 1 through 6, will your experience affect your ability to render an impartial verdict in this case?

8.    Do you have any preconceptions or prejudices against large corporations which would affect your judgment in this case?

9.    Do you feel that large corporations should be obligated to pay damages to injured persons regardless of the existence, nature, extent and/or degree of fault and/or liability of the corporation?

10.   Do you have any preconceptions or prejudices against AMTRAK or other railroads which would affect your judgment in this case?

11.   Do you feel that railroad corporations should be obligated to pay damages to injured persons regardless of the existence, nature, extent and/or degree of fault and /or liability of the railroad corporation?

12.   Are you, any members of your family, relatives or friends receiving accident insurance benefits, social security benefits, state or federal benefits for disabilities, worker's

compensation benefits, veterans' benefits, unemployment compensation insurance benefits, or early payment from any public or private pensions due to any disability or to your medical condition(s)?

13.    Have you, any members of your family, relatives or friends ever received accident insurance benefits, social security benefits, state or federal benefits for disabilities, worker's compensation benefits, veterans' benefits, unemployment compensation insurance benefits, or early payment from any public or private pensions due to any disability or to your medical condition(s)?

14.    Have you, any members of your family, relatives or friends ever suffered a physical disability or limitation or injury of any kind that affected the ability to work?

15.    Have you, any members of your family, relatives or friends ever filed a claim for accident insurance benefits, social security benefits, state or federal benefits for disabilities, worker's compensation benefits, veterans' benefits, unemployment compensation insurance benefits, or early payment from any public or private pensions due to any disability or to a medical condition(s)?

16.    Have you, any members of your family, relatives or friends ever suffered from carpal tunnel syndrome or any type of arthritis?

17.    If you answered "yes" to any of questions 12 through 16, will your experience affect your ability to render an impartial verdict in this case?

2